FITCH HOLDEN *v.* THE RUTLAND AND BURLINGTON RAIL-
ROAD COMPANY.

*Pleading. Liability of railroad companies for injuries caused by their neglect to fence their roads, or by their negligence in constructing them.*

In an action on the case against a railroad company, the declaration alleged that the defendants neglected to keep a suitable fence along their track, and that "for want of such fence the plaintiff's horse escaped from his pasture and went at large, and by means of going at large, as aforesaid, the horse was greatly injured, whereby an action, etc." *Held*, that though this declaration might have been bad, on demurrer, it was sufficient on a motion in arrest of judgment after verdict for the plaintiff.

It appeared that the plaintiff's horse escaped in the night from his pasture on to the railroad track, on account of the want of a proper fence along the same, and was found in the morning a mile from the plaintiff's land in a rocky pasture, seriously injured in the leg, and there was some evidence tending to show that this injury was received in the pasture where he was found. The court charged the jury that "if they were satisfied from the evidence that there was a clear connection between the escape of the horse and the injury received, the plaintiff would be entitled to recover." *Held*, that the charge was erroneous in not instructing the jury to distinguish between a *direct* and a *remote* connection between the want of a suitable fence and the injury, and that if they did not find a *direct* connection between the two, the plaintiff could not recover.

The plaintiff's cows passed from his field on to one H.'s land, which was occupied by H. and the plaintiff in common, and thence on to a piece of land belonging to the plaintiff, but which he had leased to the defendants as a wood yard, and from this wood yard, which was not properly fenced, on to the defendants' track, where they were killed by the defendants' cars. There was no express agreement between the plaintiff and defendants in regard to the exclusive occupancy by the latter of the wood yard nor in regard to who should maintain the fences around it. *Held*, in an action against the railroad company for killing the cows, that under these circumstances the court should have left it to the jury to find whether the defendants were or were not to have the exclusive occupancy of the wood yard, and also whether the cows escaped from H.'s land into the wood yard through a defect in the fence which the defendants were bound to repair.

As soon as railroad companies have opened the fields of an adjoining land-holder for the purpose of constructing their road, they are bound to use all reasonable and prudent means to restrain the cattle of the land owner from straying on to the railroad track, and to prevent the irruption of other cattle into his lands from their line of road.

Holden *v.* Rutland and Burlington Railroad Company.

Whether such prudent and reasonable means have been taken, whenever the question arises before the company commence running the road, depends upon the facts in each case, and is a question for the jury.

The case of *Clark* v. *Vermont and Canada Railroad Company,* 28 Vt. 103, on this point, explained and approved.

CASE for the neglect of the defendants to keep a suitable fence along the line of their railroad, whereby, on three different occasions, the horses and cows of the plaintiff were injured or killed. The declaration contained three counts. The first alleged that on the 8th of September, 1849, for want of such a fence as it was the duty of the defendants to make and maintain, a horse of the plaintiff escaped from his land and went at large, and by means of going at large, was greatly injured. The second count alleged the injury on another occasion, of a cow belonging to the plaintiff, by the locomotive of the defendants, the cow having escaped from the plaintiff's field on to the track of the railroad, by reason of the neglect of the defendants to build a suitable fence along their track. The defendants made no question as to their liability under the second count.

The third count alleged that on a third occasion two cows of the plaintiff, for the want of a proper fence along the track of the railroad, escaped from the plaintiff's farm on to the defendants' track and were there run over and killed by a locomotive belonging to the defendants.

Plea. the general issue, and trial by jury at the March Term, 1857,—KITTREDGE, J., presiding.

On the trial the plaintiff introduced evidence showing that the defendants' railroad passed through his farm in Mount Holly, and that in September, 1849, before the road was fenced, the contractors were working a cut and carrying the earth from the cut on to that part of their road bed which crossed the plaintiff's land, and that they were accustomed at night to place their carts across the cut in such a manner as to prevent the plaintiff's cattle and horses from passing through it on to a field of grain belonging to the plaintiff; that the grain was removed from the field on the 7th of September, 1849, and on that night the carts were not placed in the cut as formerly, and that consequently there was nothing to

prevent cattle and horses from straying on the road bed and passing away from the defendants' premises, and that a valuable and sound horse belonging to the plaintiff, did on that night escape from his grazing lot and passed through the cut and was found the next morning in a rocky pasture belonging to one Alvin Holden, a mile distant from the plaintiff's land, so wounded, cut and bruised under the fet lock of the fore leg as to render him of no value No evidence was given to show with certainty when or how the horse was hurt. But Alvin Holden testified that he found a stone in his pasture that morning where a horse's foot might have got in, on which he discovered some hair and blood, and that the wound was bleeding badly when the horse was first found in that pasture. The defendants' railroad was opened for public use and travel on the last day of December, 1849.

Under the third count the plaintiff gave evidence tending to show that on the 19th of August, 1851, two of his cows were killed by the passenger train of the defendants, and that these cows passed from the plaintiff's land on to a piece of land owned by one Horton, and occupied by him and the plaintiff in common, and from thence on to a small gore of land belonging to the plaintiff, lying along side of the defendants' track, and that they passed from this gore on to the railroad through an opening made by the employees of the defendants, by taking away a pile of wood which had stood there. It appeared that in 1849, the defendants obtained of the plaintiff the privilege of piling wood for their use on this gore of land, and that the defendants had since then occupied it for that purpose for the greater part of the time, and paid the plaintiff three dollars a year for the use of it. At the time this privilege was first obtained, nothing was said about who should repair the fences, but it appeared that on two occasions the defendants' servants had paid the plaintiff for repairing the fences around this gore. Usually no fence was kept up between the wood yard and road bed, but occasionally, when the wood was taken away, the track-men had put a temporary fence. No evidence was given that the plaintiff made any reservation of this land to himself when he leased it to the defendants, or that he had ever made any use of it since that time, or that he gave the defendants any notice that he wished to let his cattle run on it.

Holden *v*. Rutland and Burlington Railroad Company.

The defendants requested the court to charge the jury that they were not bound to fence their road before proceeding to work it, but that if they fenced the road within a reasonable time, and before the same was opened for public travel, it was all the law required.

The defendants also requested the court to charge that if the jury should find that the horse escaped from the plaintiff's meadow, for want of fences, which the defendants were bound to make, and was accidentally injured while on some other person's land, in some manner unknown, that such injury was too remote to warrant any recovery for such damages, and that to entitle the plaintiff to recover for the horse, he must show affirmatively that there was some natural and necessary connection between the want of fences and the injury that happened to the horse, and that as there was no evidence whatever as to how the horse was injured, the defendants, as matter of law, were entitled to judgment on that count.

The defendants also requested the court to charge the jury that the plaintiff was not entitled to recover under the third count, as it was his own fault that the cattle escaped from his own inclosures, and that in consequence of the hiring and occupying the land for a wood yard by the railroad company, in the absence of any evidence tending to prove any reservation in renting the wood yard, or any occupation thereof, after renting the same, by the plaintiff, or any notice to the company that the plaintiff was about, in any way, to occupy it, he could not recover, and that in the absence of any agreement on the subject, it would be the duty of the plaintiff as the owner of the farm or wood yard, to sustain the fences adjoining other proprietors.

The court declined to charge as requested, except as follows, and did charge that the defendants were bound to build their fences between their roadway and the land-holders adjoining, whenever they entered upon and took possession of their lands for their road, and opened and exposed the adjoining fields for the working of their road, and that any damages sustained by the plaintiff for the want of such fences, could be recovered of the company. The court further charged the jury that the hiring of the privilege of putting wood on the gore of land by the company did not give them an exclusive right of occupancy of the wood yard, but that if

the plaintiff's cows escaped from his lands and passed through Horton's land, and from thence on to the gore or wood yard, and from thence on to the railroad, the company would be liable for the injuries to the plaintiff's cows, though the jury should find the plaintiff had never in any way occupied the gore since the first letting in 1849 ; and though they should find there was no notice of any intention to allow his cows to run on it, and that the plaintiff, in the absence of any agreement, was not bound to sustain the fences between this gore of land and the railroad. The court further charged the jury that as to the horse, the plaintiff was not entitled to recover, unless there was some connection found by the jury between the escape and the injury, and that the court were not aware of any evidence to show precisely how the injury was committed, except the evidence tending to show that there were some hair and blood seen the next morning on a stone in Alvin Holden's lot, together with the appearance of the tracks leading from the plaintiff's meadow, where the horse escaped, and the appearance of the horse when found next morning. But that it was a question of fact for the jury, and if they were satisfied from the evidence, that there was a clear connection between the escape of the horse and his injury, then the plaintiff would be entitled to recover on the first count, but that if they found there was no such connection, then the plaintiff ought not to recover on that count.

The jury returned a general verdict for the plaintiff upon all the counts. To the refusal of the court to charge the jury as requested, and to the charge, as given by the court, the defendants excepted.

After verdict, the defendants moved in arrest of judgment, on account of the insufficiency of the first count in the plaintiff's declaration. The particular ground of this motion is stated in the opinion of the court. The county court ordered the judgment arrested and the verdict set aside, to which the plaintiff excepted.

*Fisher & Nicholson,* for the plaintiff.

*Briggs & Nicholson* and *Linsley & Prout,* for the defendants.

The opinion of the court was delivered by

ALDIS, J. This was an action on the case. The declaration

contained three counts. There was a general verdict upon all the counts for the plaintiff. After verdict the defendants moved in arrest of judgment, on account of the insufficiency of the first count in the declaration. Upon this motion the county court arrested the judgment and set aside the verdict.

The declaration alleges that the defendants neglected to keep a fence on the line of their railroad adjoining the plaintiff's land, as required by law, that for want of such fence the plaintiff's horse escaped from the plaintiff's pasture and "went at large, and by means of going at large as aforesaid, the horse was greatly injured, damaged and destroyed, whereby," etc.

I. It is this allegation in the declaration which the defendants insist is so defective as to require an arrest of the judgment.

It is urged that the defendants' negligence, as complained of, is the not keeping in repair a fence which the defendants were bound to maintain, and that the injury alleged is not alleged as resulting from such negligence of the defendants, but from something else, viz: " the going at large of the horse."

We think that the plaintiff, in stating the injury, might well state it in the natural order of events; viz: first, the negligence and consequent escape, secondly, the going at large, and then the injury therefrom resulting, and that such a statement in the natural and connected order in which the events happened is clearly proper and right; for the objection that the injury is alleged as the result of the going at large, and not as a consequence of a want of a fence, can only be sustained by a severance of the last averment from that which precedes it, and with which it is naturally connected. This, it seems to us, would be doing violence to the fair meaning of the language of the declaration, and to that natural order in the averments which the pleader should observe.

It is further urged that the declaration is uncertain, in not stating with greater detail how the going at large caused the injury to the horse. If this objection had been properly taken upon demurrer it might have been sustained; for the declaration ought to set out the facts, which connect the injury with the going at large, and show how the one resulted from the other. The going at large may have existed, and also the injury, and yet the one have had nothing to do with the other. The facts which connected the two, being

Holden *v.* Rutland and Burlington Railroad Company.

material and traversible, ought to have been stated in the declaration. The defect is, that the declaration alleges *generally,* that by means of the going at large the horse got injured, when it should have set forth *particularly* in what manner and by what means the going at large produced the injury.

Now this objection is precisely one of that class which is aided by verdict. Before trial by jury the defendants might have required the plaintiff to set forth particularly, instead of generally, these material facts, but they saw fit to waive that right and proceed to trial upon such general allegation. After verdict the court will presume that those facts were proved to the jury which the general averment covered. , The general rule is, that the verdict, by legal and necessary intendment, supplies facts, the proof of which was necessary to satisfy the jury in finding the verdict, and which may be reasonably inferred to have been so supplied by their connection with those that are alleged ; much more, as in this case, the verdict will be sustained, when the facts are, strictly speaking, not omitted, but only generally alleged.

We think, therefore, that the decision of the county court, in arresting the judgment was erroneous.

II. The defendants have also filed exceptions in the case as to that part of the charge relating to the connection between the want of fences and the injury to the horse. The language of the charge is " if the jury were satisfied from the evidence there was a clear connection between the escape of the horse and the injury received, then the plaintiff should recover," etc.

Assuming that the jury would have understood from the terms " the escape of the horse" that the court meant " the want of fences and the consequent escape of the horse," still the language used, viz : " a clear connection," etc., was likely to mislead them. The jury might naturally be lead to think, if the horse had not escaped he would not have got hurt; and hence that there was a clear connection between the escape and the injury, no matter how *remotely or indirectly* the want of fences contributed to the injury. This would be clearly wrong. The language used was not the legal and appropriate language to define the manner in which the damages to be recovered should result from the defendants' breach of duty.

The breach of duty on the part of the defendants was their

neglect to keep up a fence as required by law. The damages for which they were liable must have been the natural and direct consequence of such neglect. In the application of the rule to this case, there certainly was difficulty, from the peculiarity of its facts and the generality in the averments of the declaration. The substance of the plaintiff's claim was, that the horse, from the want of the fence, escaped and strayed into a stony and rocky pasture where a horse would be likely, on account of the stones and rocks, to get injured, and did thereby get injured. It is obvious, that whether this was a *natural and direct* or a *remote and accidental* consequence, would be a question of fact to be determined by the jury upon the circumstances of the case; such as the character of the pasture, and whether it was one in which a young horse would be likely to get hurt on account of the rocks and stones in it; and whether, on account of its proximity to the plaintiff's field, a horse escaping therefrom, would be likely to get into it. These, and perhaps other similar considerations would determine the point.

If the defendants, in the exercise of such care and judgment as a prudent owner of the horse would have used, ought to have foreseen, that the horse escaping might reasonably be expected to get into such pasture and so get injured, then they would be liable; but if the probability of an injury from such causes was so remote as not to be reasonably expected by any one in the exercise of such prudence, then he would not be liable. In the first case, it would be the direct and immediate consequence of the neglect of the defendants; in the last, it would be properly attributable to chance and accident.

These limitations of the defendants' liability to damages, do not seem to have been properly stated in the charge of the court. The jury may well have found a clear connection between the escape and the injury, and yet one so remote as to furnish no legal ground of damage.

III. The defendants also object to that part of the charge relating to the liability of the defendants for the injury to the cows described in the third count of the declaration.

From the statement of the facts in the bill of exceptions, it is plain that if the cows were rightfully on the gore of land, then the defendants were unquestionably liable for not having a fence to

Holden *v.* Rutland and Burlington Railroad Company.

prevent their escape. Whether they were rightfully there would depend first, on the agreement of the parties as to the occupancy of the land. If the defendants were to have the exclusive possession, they were not rightfully there. If, on the other hand, the right to pasture his cows there was reserved to the plaintiff, they were rightfully there. It does not appear that this point was settled by the parties, either by any written or express parol agreement. In the absence of an express agreement on this subject, it was the duty of the court to submit all the facts in relation to this point to the decision of the jury, and it was for them to consider the position of the land, the agreement about its use, so far as any was made, the actual user, the conduct of the parties in relation to it, and all the other facts tending to show what was the real understanding of the parties on this point; and to decide whether the parties did agree that the plaintiff was or was not to have the right to turn his cows upon this gore of land. This the court below did not do; but assumed as matter of law, and so charged the jury, that the defendants had no exclusive occupancy of the land, and, as it would seem by natural inference, though not by express instructions, that the plaintiff had the right to have his cows upon the the land in question.

Secondly, the jury might well have understood from the charge that if the cows escaped from Horton's land on to this gore, and so on to the railroad track and got injured, that the defendants were liable in any event, even though they escaped from Horton's land through a defect in the fence which Horton was bound to repair. From the facts as stated, the cows were rightfully on Horton's land. If the defendants were in the exclusive occupancy of the gore of land, then, in the absence of any agreement, the plaintiff would not be bound to fence between the gore and Horton's land; but it would belong either to Horton or the defendants, or both, to maintain that fence. In that case, if the cows escaped from Horton's land through a defect in the fence between it and the gore, which the defendants were bound to maintain, then they would be liable; otherwise not. The court, therefore, on this point should have submitted the question to the jury, whether the cows did escape from Horton's land on to the gore through a defect in the fence which the railroad company ought to repair; necessarily

involving the inquiry as to who was bound to maintain that fence.

The court also charged that the defendants were bound to build their fences between their line and the adjoining lands, when they entered upon their lands to build their road. The charter of the company requires them "to build and maintain a fence on each side of their railroad;" but it does not state at what time such fence shall be built. This court, in the case of *Clark* v. *The Vermont and Canada Railroad Company*, reported in 28 Vermont, has decided that it must be built "at least as soon as the company shall commence running their road." Whether they, as matter of law, are required by law to build it earlier, was a question not necessary to the decision of that case, and may perhaps still be considered as an open question. The court say in that case, that the railroad companies in constructing their roads "must exercise their rights with a prudent regard to the rights of others, and if lacking in this duty are chargeable with negligence, and must answer for the consequences. What would constitute a prudent regard for the rights of others in one case, might not in another;" and that this question of what constitutes such prudent regard, is a question to be submitted to the jury.

It must not be understood however, from the language of that case, that the rights of the landholder, or the obligations of the railroad company are to be submitted to the jury. These rights and obligations are determined by law. The railroad company, after they have opened the fields of an adjoining landholder for work, and have begun constructing their road, are bound to use all reasonable and prudent means to restrain the cattle of the land owner from straying from his land on to the railroad track, and to prevent the irruption of other cattle into his lands from their line of road. These are duties clearly devolving upon the railroad company. The landholder adjoining the line upon which the railroad company are constructing their road, is not bound to fence his lands along the line of the railroad. If the company do not fence along such line before they begin to build their road, they must, at least while building it, use all reasonable and prudent means to enable the landholder to enjoy the use of his own land in the ordinary modes of husbandry, and to prevent the irruption of the cattle of others upon his premises. In many cases doubtless this rule

would require the erection of a fence, in others not. The application of the rule must depend upon the facts of each particular case, and must be left to the jury.

As this case must be sent back for trial to the county court upon the other points before decided, we do not deem it necessary to decide the point whether the railroad company was bound, as matter of law, to build their fence before or as soon as they began constructing their road. We deem it proper to limit the decision of this case to the principles established in the 28th Vermont, as here recognized and explained.

Judgment of the county court arresting judgment reversed, and new trial granted on the defendant's exceptions.