93 607
96 492

93 607
153 ¹419

SEWELL S. PARKER v. THE LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY.

*Railroad companies—Negligence—Failure to maintain proper connecting fences and cattle-guards—Killing stock— Amendment of verdict.*

1. 3 How. Stat. § 3377, which requires railroad companies to provide their right of way fences with suitable connecting fences and cattle-guards at all highway and street crossings, and to keep them in effective repair and sufficient to prevent stock of all kinds from passing upon the tracks at such crossings, contemplates that the tracks shall be exposed within the limits of the highway only.

2. The claim of the defendant, that the manner in which it had constructed its fences and cattle-guards at the highway crossing where the injury was received was a substantial compliance with the statute cited, is held to have been properly submitted to the jury.

3. Where a colt breaks into the highway from the pasture in which it is being kept, without the knowledge of the owner or negligence on his part, and gets upon a railroad track, where it is killed, the owner cannot be said to have allowed or permitted or suffered it to run at large, within the language of the case of *Robinson v. Railroad Co.*, 79 Mich. 323.

4. It is error for the court to amend a verdict after it is entered, and the jury are discharged, by increasing the amount, upon the affidavits of the jurymen that they had instructed the foreman to return a verdict for a certain sum as the value of the property in dispute, and an additional sum for interest thereon, and that the foreman had neglected to mention the interest.

Error to Monroe.    (Kinne, J.)    Argued November 15, 1892.    Decided December 2, 1892.

Case.   Defendant brings error.   Judgment reduced to $800, and affirmed.    The facts are stated in the opinion.

C. E. Weaver (George C. Greene and O. G. Getzen-Danner, of counsel), for appellant.

George P. Voorheis, for plaintiff.

McGRATH, C. J.    Plaintiff's colt was killed at a highway crossing.   The highway runs north and south.   The railroad right of way is south-southwest.   Defendant's right of way adjoins that of the Michigan Central.   The sketch on following page will aid in a description of the situation.

The train was bound south-west, and the colt was killed at the cattle-guard.   The guard is distant from the line of the highway 35 feet, measuring on the westerly rail, and 27 feet, measuring on the easterly rail.

The statute[1] provides that every railroad company shall provide its right of way fences with—

"Suitable connecting fences and cattle-guards at all highway and street crossings, which shall at all times be kept in effective repair, and sufficient to prevent stock of all kinds from passing upon the track of the railroad at such highway or street crossings."

This statute evidently contemplates that railway tracks shall be exposed within the limits of the highway only. By exposing its right of way and tracks beyond the limits of the highway, defendant had increased the danger, and rendered itself liable for damage occasioned thereby. Andre v. Railroad Co., 30 Iowa, 107; Railroad Co. v. Newbrander, 40 Ohio St. 15; Railroad Co. v. Morgan, 38 Ind. 190; Railroad Co. v. Herbold, 99 Id. 91.

---

[1] 3 How. Stat. § 3377.

A—Cattle Guards.

In *Railroad Co. v. Morthland,* 30 Ill. 458, the horse got upon the track where no fence was required, and followed the track until he reached the cattle-guard, and the court held that the omission to keep up fences and cattle-guards did not tend to produce the injury, and the court also found that the accident was due to the fault of plaintiff in allowing the horse to run at large.

The defendant cannot complain because the court submitted to the jury its claim that the manner in which it had constructed the fences and cattle-guards was a substantial compliance with the statute.

Whether the killing was due to defendant's failure to properly construct its fences and cattle-guards was properly submitted to the jury. The train struck the colt at the cattle-guard. There was some evidence that before the train had reached the crossing the other horses had crossed over the track. This colt had dropped behind the others, and was eating grass on the company's right of way, beyond the line of the highway. Other testimony tended to show that the presence of the train prevented the colt from getting across the company's track upon the highway; that the colt, in its endeavor to get around the train, ran with the train upon the slope of the company's road-bed, had passed from the highway in and upon the company's grounds, and when it reached the guard undertook to jump across it, and was struck. In either case it cannot be said as a matter of law that the negligence of the company did not occasion the injury. There was no testimony that the colt had reached the company's track until after the head of the train had passed the line of the highway. *Mumpower v. Railroad Co.,* 59 Mo. 245; *Holden v. Railroad Co.,* 30 Vt. 297; *Towne v. Railroad,* 124 Mass. 101.

Defendant insists that plaintiff was negligent, in that the colt was running at large, and relies upon *Robinson v. Railroad Co.,* 79 Mich. 323. In that case plaintiff had

turned his cattle into the highway; but here the fact is undisputed that this colt broke out of a pasture, where it was on the morning of the day upon which it was killed, and was in the highway without plaintiff's knowledge. There was no evidence of any want of reasonable care on plaintiff's part, and he cannot be said to have allowed or permitted or suffered the colt to run at large, within the language of the Robinson case.

With reference to the questions raised upon the admission of testimony, it is sufficient to say that the colt was a well-bred animal, sired by Hambrino, and from Lady Vera, who had paced a 2:20 gait, and was entitled to registry. The testimony tended to show that the colt was a promising one. Considerable testimony of horsemen was taken as to the value of get from such stock, and we think it was properly admitted. The value was given as high as $2,500. The jury found a verdict for $800.

The verdict was rendered April 18, 1891. The case was the last tried at that term of court, and the jurors were thereupon discharged for the term. On the 22d day of May following, after the judgment had been entered, plaintiff's counsel moved the court to correct and amend the record of the verdict and judgment by adding thereto the sum of $168, so as to make them read $968, instead of $800. The motion was based upon affidavits made by each of the jurors, which set forth that they had instructed the foreman to return a verdict for $800 as the value of the horse, and $168 for interest thereupon, and that the foreman had neglected to make mention of the interest. The court granted the motion. This was error. There is no warrant for correcting a verdict after the discharge of the jury. Such a practice is open to serious objection and gross abuse. The only remedy in such case is a motion for a new trial.

The judgment will be reduced to $800, with interest

from the date of its rendition in the court below, and affirmed at that figure, with the costs of this Court to defendant.

The other Justices concurred.

———

93 612
97 442

93 612
d122 250

93 612
s53NW 793
s32ASR 528
130 487n

93 612
134 ²592
93 612
f154 ¹519