Joseph Bruce THOMPSON, Jr., Appellant
(Plaintiff Below),

v.

Fred LEE and Fred Lee, Jr., Appellees
(Defendants Below).

No. 1–1279A366.

Court of Appeals of Indiana,
First District.

April 17, 1980.

Michael J. Tosick, Greenfield, John O. Worth, Rushville, Ging, Free, Brand, Tosick & Van Winkle, Greenfield, for appellant.

James S. Foster and David E. Northam, Earnest, Foster, Eder & Levi, Rushville, for appellees.

ROBERTSON, Presiding Judge.

Joseph Bruce Thompson, Jr. (Thompson) brings this appeal from an adverse jury verdict in his personal injury and property damage suit against Fred Lee and Fred Lee, Jr. (Lees). We affirm.

The facts most favorable to the judgment are that Thompson was driving his motorcycle on May 19, 1978 at approximately 11:00 p. m. on a blacktop county road in Rush County. As he was traveling down the road, he suddenly saw a black Angus cow. He braked, but hit the animal. Thompson sustained severe injury to his shoulder and hip. The motorcycle was damaged beyond repair.

Thompson brought suit against the owners of the animal, the Lees, on the theory of strict liability. This complaint was dismissed by the trial court and an amended complaint was refiled alleging negligence. There was a trial by jury. The jury became deadlocked in its deliberations; and after an *Allen* charge was given, the jury found for the Lees. Thompson appeals.

The first issue for review involves the theory of liability which could be presented in this case. Thompson attempted through various instructions to advance three theories: strict liability, statutory negligence and negligence. The trial court allowed only the negligence theory to be presented. The trial court gave judgment on the evidence on strict liability and statutory negligence and refused various instructions on these theories.

■ We first consider Thompson's claim that strict liability can be imposed under the facts of this case. In our research, we have found only two circumstances in which strict liability is imposed on the owners of animals that have caused injury. The first circumstance involves injury caused by naturally ferocious or dangerous animals. As stated in *Bostock-Ferari Amusement Co. v. Brocksmith*, (1905) 34 Ind.App. 566, 568, 73 N.E. 281, 282:

> When a person is injured by an attack by an animal *ferae naturae*, the negligence of the owner is presumed, because the dangerous propensity of such an animal is known, and the law recognizes that safety lies only in keeping it secure.

*Bostock* limited the strict liability to injuries resulting from the vicious propensity

itself; thus, liability was denied when the plaintiff was injured because his horse took fright from merely seeing on the roadway a "large, ugly looking," but chained and docile bear.

■ It is well-settled in this State that cattle are not naturally ferocious or dangerous animals and that an owner is not strictly liable for injuries caused by the animal unless the owner had knowledge of a vicious propensity of a particular animal. *See Klenberg v. Russell*, (1890) 125 Ind. 531, 25 N.E. 596. Thus, Thompson cannot rely on this theory.

Thompson attempts to use language found in some cases that the owner of domestic animals is liable for not confining animals and if they get out "he will be answerable for the natural consequences of their escape," and for injuries he might reasonably have anticipated on account of their natural propensities. *Klenberg, supra* at 533, 25 N.E. at 596; *Dyer v. Noll*, (1938) 105 Ind.App. 241, 14 N.E.2d 760. Thompson argues that the natural consequence of a black Angus on the highway at night to the motoring public is obvious danger.

The language found in these cases is part of an expression of the second circumstance of strict liability of the owner of animals. This second circumstance arises out of technical pleading of our common law history. If cattle, for instance, broke into another's fenced fields, the injured party could sue under trespass—specifically trespass *quare clausum fregit*—the breaking of the close. Principles of negligence were not involved in this action. The owner "trespassed with his cattle." *See* 88 Annot., A.L.R.2d 709 (1963), Restatement of Torts § 504 (1938); *McNeely, A Footnote on Dangerous Animals*, 37 Mich.L.Rev. 1181 (1939); Note, *Liability for Harm Caused by Livestock*, 34 Iowa L.Rev. 318 (1949).

The case of *Page v. Hollingsworth*, (1855) 7 Ind. 317, exemplifies this theory. In that case, the defendant's cattle broke into the plaintiff's corn field and destroyed crops. An instruction was given at trial which

stated that the defendant would have to be found negligent to be found liable. The Supreme Court of Indiana reversed, stating that the instruction would be good if the claim was based on personal injury or personal property damage, but:

Here a close was broken and entered by such animals; and though their owner may not know when they are inclined to commit mischief, still it is said 'they have a natural and notorious propensity to rove,' which he is always presumed to know. Hence, he is bound, at his peril, to confine them on his own land; for if they escape and commit a trespass on the land of another, unless through the defect of fences which the latter ought to repair, the law deems the owner himself a trespasser, and holds him liable in trespass *quare clausum fregit*, though he had no notice in fact of such propensity. 3 Blacks, Comm. 211.[1]

Thus, the "natural propensity" of cattle to roam and commit trespass was the rationale (and a limiting factor) of the strict liability rule; however, we note again that trespass is a sort of strict liability action, in the sense that negligence principles do not apply.[2]

Thompson can not avail himself of this second circumstance of strict liability because the facts of this case do not involve trespassing cattle. Rather, this case is one of escaped cattle loose on the highway.

The Restatement of Torts § 518(1) (1938) states the traditional rule for liability in a case such as this:

§ 518 Liability for Harm Done by Domestic Animals Which Are Not Abnormally Dangerous.

(1) . . ., one who possesses or harbors a domestic animal, which he does not have reason to know to be abnormally dangerous but which is likely to do harm unless controlled, is subject to liability for harm done by such animal if, but only if,

(a) he fails to exercise reasonable care to confine or otherwise control it, and

(b) the harm is of a sort which it is normal for animals of its class to do.

*See also* 59 A.L.R.2d 1328 (1958).

The § 518(1)(b) requirement has caused an interesting line of cases in Indiana. In *Anderson v. Nesbitt*, (1909) 43 Ind.App. 703, 88 N.E. 523, a horse took fright at the sight of cows which were claimed to be negligently left to roam.[3] The court found no liability, essentially finding no proximate cause. In *Dyer v. Noll, supra,* the court found it was not a natural tendency for colts to run in front of automobiles and thus there was no liability.

The height of senselessness of the "normal harm" requirement of § 518(1)(b) was reached in *Corey v. Smith*, (1954) 233 Ind. 452, 120 N.E.2d 410. Plaintiff brought suit for personal injuries and property damage resulting from striking a black Angus bull

---

**1.** Later cases suggest a "fence-in" rule not a "fence-out" rule. *Stone v. Kopka*, (1884) 100 Ind. 458; *Brady v. Ball*, (1860) 14 Ind. 317; *Klenberg, supra.*

**2.** We leave to the proper case whether the distinction between strict liability and that based on fault, depending on whether domesticated livestock are trespassing when the harm occurs, should be rejected. It has been stated in Note, *Liability for Harm Caused by Livestock*, 34 Iowa L.Rev. 318, 328–329 (1949):

The distinction seems to make liability depend on mere chance. From the standpoint of the owner, the law requires that the animal be restrained and the place where the harm is done after the animal has escaped is usually beyond his control. From the stand-

point of the plaintiff whose property or person is injured, the distinction seems no more logical . . . . The true basis for the distinction seems to be the ancient fiction that a man trespasses with his beasts. It is hardly reasonable that a distinction based on fiction should, in not dissimilar situations, have the effect of making an animal owner practically an insurer in one but liable for negligence in the other. (footnotes omitted)

**3.** After reading the cases in this area of the law, we are left wondering if Indiana horses take fright more easily than others. However, as noted in *Bostock, supra* at 570, 73 N.E. at 282, "King David said, 'a horse is a vain thing for safety.'"

which darted in front of the plaintiff's car.[4] The defendant claimed that the plaintiff had to prove that the "Angus was vicious or had a propensity to attack automobiles." *Corey, supra* at 456, 120 N.E.2d at 412. The Indiana Supreme Court noted that the Angus "could have been as gentle as a cat or dog, yet 700 pounds of black animal on a black top state highway constituted a menace in the nighttime to the traveling public." *Id.* The court, at 457 nn. 2 & 3, 120 N.E.2d 412–13, nn. 2 & 3, seemed to endorse a standard of "imposing on cattle owners a duty of using ordinary care in the care and control of cattle. . . . There is no reason for exempting cattle owners from the same duty applicable to other people to use 'ordinary care or skill in the management of [their] property'" quoting *Galeppi Bros., Inc. v. Bartlett*, 120 F.2d 208 (9 Cir., 1941).

> This duty in modern times requires that the owner of livestock exercise ordinary care not to let his livestock stray out onto a much-traveled highway, because under our modern traffic conditions he can reasonably anticipate that, if the livestock stray onto such a highway, they are apt to damage persons or property. [quoting *Drew v. Gross*, (1925) 112 Ohio St. 485, 491, 147 N.E. 757, 759.] *See also Leek v. Lumpkin*, (1967) 141 Ind.App. 153, 226 N.E.2d 913.[5]

What we are left with, then, is a negligence standard of reasonable care for containing and/or controlling cattle to prevent the obvious danger of escaped cattle to the motoring public.[6] Thus, there was no error by the trial court in refusing to instruct on strict liability or in giving judgment on the evidence to the Lees on this theory.

We turn to whether statutory negligence could properly have been presented in this case. *Corey v. Smith, supra,* found that the precursor of the following statute was enacted for the protection of motorists:

> No owner or person responsible for any domestic animal shall permit such animal to run at large. Ind.Code 15–2–4–21.

However, it has been repeatedly held that the word "permit" in the above-quoted statute means actual or constructive knowledge that the animal is no longer

---

4. We cannot resist quoting the outcome of the collision, *Corey, supra*, at 454–55, 120 N.E.2d at 411:

> The force of the collision rendered the car *hors de combat*, with its fender and hood smashed, the radiator bursted and the steering knocked out of alignment, but Angus, marvelous to relate, sustained no visible injuries, and was stimulated in his energy and agility, for he ran across the road and then over a fence into a field which was high in weeds, and escaped that night from two deputy sheriffs and four other persons attempting to corral him. The owner of the bull testified that Angus was young and weighed a little over 700 pounds and was "gentle as any dog or cat."

5. Note, *Liability for Harm Caused by Livestock*, 34 Iowa L.Rev. 318, 323, suggests the *Corey* view, (that is: rejecting the necessity to prove "natural actions,") is the majority one. Restatement of Torts (Second), § 518 (1977) drops the "natural harm" requirement. We think the analysis of "natural acts" or "normal harm" is better left to consideration of proximate cause or whether reasonable care was exercised under the circumstances of the case.

6. One commentator suggests a risk/benefit analysis in examining whether the defendant has exercised due care. *McNeely, A Footnote On Dangerous Animals*, 37 Mich.L.Rev. 1181, 1195 (1939). Factors to consider are: (a) the magnitude of the risk involved, (b) the economic and social usefulness of the defendant's conduct in keeping the particular animal; and (c) the relative positions of the parties.

The Restatement of Torts § 518 (1938), Comment d suggests the same analysis:

> This Subsection is applicable to those domestic animals of a class which can be confined to the premises of their keepers or otherwise kept under constant control without seriously affecting their usefulness and which are not abnormally dangerous. While the utility of such animals is sufficient to justify their being kept without risk of the strict liability stated in § 509, many of them are recognizably likely to do substantial harm while out of control and, therefore, their keepers are under a duty to exercise reasonable care to have them under a constant and effective control.

confined within an enclosure. *Sork v. Taylor Bros., Inc.,* (1971) 150 Ind.App. 626, 277 N.E.2d 5; *Leek, supra.* There was no evidence presented that the defendants had actual or constructive knowledge that the cattle had escaped. Thus, there was no error in refusing the negligence, per se, or statutory negligence, instruction, *Dahlberg v. Ogle,* (1978) Ind., 373 N.E.2d 159, or in giving the judgment on the evidence on this theory.

■ The second error raised by Thompson is waived. This alleged error is the refusal to admit medical records through a medical records librarian. Thompson made no offer to prove or no attempt, either at trial or on appeal, to place the medical documents in the record. While Ind.Rules of Procedure, Trial Rule 43(C) does not directly address documentary evidence and the case law is unclear, *see Podgor v. Indiana University,* (1978) Ind.App., 381 N.E.2d 1274, 1281, we think it essential that at least the proffered documents be in the record for us to intelligently examine the appellant's claims of error. *See Palmer v. Hoffman,* (1943) 318 U.S. 109, 116, 63 S.Ct. 477, 481, 87 L.Ed. 645.

■ The third error raised on appeal concerns evidence admitted at trial. Thompson objected to a question asked of him on cross-examination as to whether he had been involved in previous accidents. The issue of previous accidents had been alluded to by Thompson in direct examination because he had been injured in the previous accident. In Indiana, where the direct examination of a witness opens up a general subject, the cross-examiner may ask any relevant question on the subject matter. *Rodinelli v. Bowden,* (1973) 155 Ind.App. 582, 293 N.E.2d 812.

■ It has been stated that the general rule is that cross-examination and other evidence is admissible to show that the injury complained of is due to some other cause where the present injury and the prior injury or condition are similar, or where a causal relationship between them can be shown. *Rodinelli, supra* at 586, 293 N.E.2d at 814. This evidence must be elicited in good faith; not for the purpose of prejudicing the jury. Testimony as to a prior accident is relevant where there is competent proof from which it could be inferred that the injury complained of is attributable to the prior event. *Rodinelli, supra* at 586, 293 N.E.2d at 815 (and authority cited therein).

■ On cross-examination, in this case, questions were asked concerning other accidents in which Thompson had been injured. The testimony was clearly relevant as to the type and amount of injury and damage that Thompson had in the accident at trial. In fact, testimony was elicited that some or part of the medical bills discussed in direct examination as part of damages had been used as the basis of a previous settlement. We find no error in the admission of this evidence.[7]

■ Thompson alleges error in the admission of evidence consisting of testimony of a farmer in the area who compared his fences with that of the Lees. One of the issues in the case was whether the Lees' fences were adequate. This admitted evidence could be best described as custom, usage or practice evidence which is not *per se* inadmissible and, indeed, has been accepted in Indiana cases as relevant to the issue of negligence. It must be distinguished, however, from evidence of proof of the standard of care. *Walters v. Kellam & Foley,* (1977) Ind.App., 360 N.E.2d 199, 215. This same principle applies regarding evidence admitted concerning the practice of leaving fence gates open, and thus, there was no error on these issues.

7. Thompson alleges error in his brief on the manner in which the trial court overruled his objection with the comment, "You got to be kidding." While we do not condone such comments, we note that Thompson did not object to the characterization of the objection at trial and thus presents no error for our review.

We further note that Thompson objected to only the first witness who offered such testimony; the others testified on the same subjects without objection. Thompson has the burden of proving prejudice from the admission and the admission without objection of similar testimony does not advance his cause.

■ Thompson next alleges error in the giving of certain instructions on contributory negligence. His argument is that there is no evidence on which one can base the instructions given. It is, of course, error to give an instruction where there is no evidence on the issue. *Cooper v. High*, (1974) 262 Ind. 405, 317 N.E.2d 177.

The first instruction we consider is a pattern jury instruction based on the violation of a statute. The statute, IC 9–4–1–57(a) and (c) requires one to drive no faster than is

> reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing.
>
> In every event speed shall be so restricted as may be necessary to avoid colliding with any person, or vehicle or other conveyance on or near, or entering a highway in compliance with legal requirements and with the duty of all persons to use due care.

The instruction further quotes the statute that a driver shall

> drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching or going around a curve, when approaching a hillcrest, when traveling upon any narrow or winding roadway, and when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions.

It is true that the instruction is overbroad in that it describes many "special hazards" that did not exist in this case. The evidence shows that Thompson momentarily glanced down to check his speed which was 45 m.p.h., that it was nighttime, that the blacktop was rough in places, that he had passed a hilly section between 1,000 and 500 feet before the accident and that his headlight may have been dim. It is equally true that Thompson was traveling below the maximum speed, the night was dry and he had traveled the road before.

■ We think, however, the evidence was such that a factual controversy as to reasonable speed under the conditions was before the jury and thus, the giving of the instruction was not reversible error.

Thompson next objects to an instruction concerning statutory violation for not having a proper motorcycle light. Again the objection was to the lack of evidence on the issue. Thompson guessed, under cross-examination, that the headlights shone 40 to 50 feet down the road. This created a factual controversy concerning a statutory violation by Thompson, as the statute requires a much greater distance of illumination.

Five other instructions were given which defined or explained the consequences of contributory negligence. As we have found some evidence that created a factual controversy concerning Thompson's contributory negligence, we find no error in the giving of the instructions. We note that at trial Thompson did not object to the sheer quantity of instructions on contributory negligence.

The next issue for us to consider is the propriety of giving a supplemental *"Allen"* charge after the jury informed the court it was deadlocked. We have decided that the giving of an identical instruction in a criminal case is not reversible error. *Guffey v. State*, (1979) Ind.App., 386 N.E.2d 692. We can think of no distinction between criminal and civil cases that would cause us to create a separate rule for civil cases. In an annotation on the subject, it has been stated:

> the principles or considerations governing the propriety of verdict-urging instructions in civil cases appear to be essentially

the same as they are with respect to criminal trials, the courts having rarely, if ever, suggested any considerations as clearly differentiating the two kinds of trials in this respect.

Annot., 19 A.L.R.2d 1257, 1258 (1951). *See also*: Annot., 38 A.L.R.3d 1281 (1971); Annot., 41 A.L.R.3d 845 (1972); Annot., 41 A.L.R.3d 1154 (1972).

 We therefore adopt the reasoning of *Guffey v. State, supra*, on the matter and find no error here.

 The last issue for us to consider is whether there was sufficient evidence to support the verdict or whether the verdict was contrary to law. We first note that on appeal from a negative judgment, a claim of insufficient evidence presents no issue for our review. *Graves v. City of Muncie*, (1970) 255 Ind. 360, 264 N.E.2d 607. Our standard of review as to whether the verdict was contrary to law is only when the evidence is without conflict and leads to but one conclusion and the fact-finder reached a contrary conclusion will we disturb the decision. *Wallace v. Rogier*, (1979) Ind.App., 395 N.E.2d 297.

 Applying such analysis to the facts of this case, we cannot say we are forced to an opposite conclusion than the one the jury reached. There was evidence that the defendant used reasonable care on the maintenance and quality of their fencing.

Judgment affirmed.

NEAL and RATLIFF, JJ., concur.