Robert Alan **BLAKE**, Appellant,

v.

**DUNN FARMS, INC.**, Appellee.

No. 1280S431.

Supreme Court of Indiana.

Dec. 5, 1980.

Kennerk, Dumas, Burke, Backs, Long & Salin, P. C., Fort Wayne, Robert E. Bostwick, Wabash, for appellant.

Howard J. DeTrude, Jr., Mark D. Gray, Peter G. Tamulonis, Kightlinger, Young, Gray & DeTrude, Indianapolis, for appellee.

ON PETITION TO TRANSFER

PIVARNIK, Justice.

This case comes to us on a petition to transfer from the Second District Court of Appeals. Plaintiff Robert Blake appealed from a summary judgment entered in favor of Defendant Dunn Farms, Inc. The primary issue in the case was the duty of the landowner to persons on an adjacent public road, particularly as that duty applies to the ownership and keeping of domestic animals. In addition, a procedural issue was raised on appeal and is presented to us here on transfer regarding the fact that the judgment by the trial court purported to be a judgment on the pleadings as set forth in Ind.R.Tr.P. 12(C). Rule 12(C) provides that when matters other than those in the pleadings are considered by the trial court, the determination is then transformed into a summary judgment. The judgment was so considered by the Court of Appeals. This case remained in the trial court in various pleading stages for approximately four years. Plaintiff Robert Blake had filed a motion for summary judgment early on in the proceedings, and the court overruled the motion at that time. After the case was set for trial and the issues had been established early by the pleadings, the defendant filed a motion for judgment on the pleadings under Trial Rule 12(C). All parties agreed that the court could consider the pleadings, depositions, affidavits and interrogatories filed by the parties to determine this motion. The court did consider all of these documents in making its determination, and entered judgment in favor of the defendant. We agree with the Court of Appeals that under Trial Rule 12(C), the court, in considering the depositions, affidavits, and interrogatories, treated the motion as one for summary judgment and entered judgment accordingly; therefore, the case

is properly reviewed on appeal on that basis. We further find that this case presents an issue of such public import that this Court should pass judgment on it. We accordingly grant transfer and vacate the opinions of the Court of Appeals. This vacation applies to the original opinion issued by the Court of Appeals on November 5, 1979, *Blake v. Dunn Farms, Inc.*, (1979) Ind.App., 396 N.E.2d 415 and the opinion on Petition for Rehearing issued on January 22, 1980, *Blake v. Dunn Farms, Inc.*, Ind. App., 399 N.E.2d 431.

There is not a great deal of dispute on the facts of this case. Plaintiff Blake was a passenger in an automobile which struck a horse at night. The accident occurred on a portion of a state highway running through Dunn's land. Plaintiff was severely injured and brought action against Love, the owner of the horse, and Dunn Farms, the landowner. The complaint alleged that Dunn and Love were negligent in allowing the fences to fall into a state of disrepair, and that Dunn and Love were negligent in permitting a horse to run on the state right-of-way and highway.

Dunn Farms was a family–owned corporation, the officers residing in Arizona. The farm manager and attorneys for the corporation were located in Marion, Indiana, and these agents supervised the leasing of the property. In about 1969, Robert McConnell rented the house, barn, and the property on both sides of the highway. Seventeen acres of the property were on the west side of State Highway Fifteen, and the remaining property, including the house and barn, was on the east side of the highway. Along with other farming endeavors, McConnell kept horses in the pasture fields. In June, 1971, McConnell and Love agreed that Love would pasture his horses in the west pasture. Love maintained horses and ponies in the west pasture during 1971 and 1972, including the date of the incident herein, November 21, 1972. Love claims he paid cash rent to McConnell and performed services in exchange for the right to pasture his animals.

In March, 1972, McConnell and his wife were divorced. He vacated the property, and Mrs. McConnell stayed on as the lessee and made a new agreement with Love, under which he paid additional rent and performed certain services. In June, 1972, Mrs. McConnell married Clarence Auler, and she and her new husband lived on the property as lessees until August 28 or 29, 1972. She paid rent to Dunn Farms through October, 1972. Dunn Farms and the Aulers were unable to agree upon a lease, and the Aulers left the property on that date. Apparently Love continued to maintain his horses and ponies in the west pasture.

One or more of the stockholders and officers made occasional trips to Indiana for business purposes. They were in Marion twice in 1969, and in October, 1970, and August, 1972. The president and secretary of Dunn Farms came to Indiana on November 18, 1972, and went to the property on that day and each succeeding day, to and including the day of November 21, 1972, when this accident occurred. Their purpose for being on the property was to clean up the buildings and make arrangements to find a new renter for the property. There was evidence that, in their trips to the house and building area, one or more of the owners (Dunns) saw some horses in the fields.

The summary judgment entered by the trial court here was based on Dunn Farms' contention that a landowner who is neither the owner not custodian of a horse cannot be held liable for injury caused by the alleged escape and running at large of such horse. The court reasoned that mere ownership of land cannot serve as a basis for liability. The uncontroverted evidence showed that Dunn Farms was neither the owner nor the custodian of the horse in question, had no material relation to such horse, and had no material relation to the owner–keeper of such horse. Although there was evidence that Love's horses had been out or the pastures before, there was no evidence that Dunn Farms' owners had any knowledge of these incidents.

■ The keeper of an animal has the duty and responsibility to provide for the restraining and confinement of that animal. Those cases which have been presented with this issue were, in fact, decided on the basis of this responsibility for the keeping and confinement of the animal. *See, e. g., Thompson v. Lee,* (1980) Ind.App., 402 N.E.2d 1309. In *Corey v. Smith,* (1954) 233 Ind. 452, 120 N.E.2d 410, this Court followed that rule of law in affirming a judgment against defendant Corey. Corey had rented a black angus bull from Harvey Case, who was also named as a defendant in the lawsuit. While Corey had the bull in his possession, it escaped its enclosure and was on and about the highway adjacent to the land. There was evidence that Corey knew of this and yet did not cause the bull to be removed from the highway and safely returned to its enclosure. The bull was struck by the plaintiff's vehicle, and the accident and damages resulting to her were therefore found to be Corey's responsibility. A directed verdict was entered for Case at the close of the plaintiff's evidence. The court found that Corey was responsible for the damage caused to plaintiffs because of his negligence in allowing the angus bull under his care to run at large, noting that it was not essential to plaintiff's cause of action to establish that the anus was vicious or had a propensity to attack automobiles. "He could have been gentle as a cat or dog, yet seven hundred pounds of black animal on a black-top state highway constituted a menace in the nighttime to the traveling public." *Id.* at 456, 120 N.E.2d at 412. Notably, there was a statute in effect in Indiana at that time that provided for a criminal penalty for any person owning or harboring horses, mules, cattle, sheep, goats or swine, to permit such animals to roam at large upon the highways of the State or to feed upon or pasture upon the lands of another. Corey's violation of this statute was found to be negligence *per se* in Smith's action against him. Today the law in Indiana states that "A person responsible for a domestic animal who recklessly permits the animal to run at large commits a class B misdemeanor." Ind. Code § 15–2.1–21–8 (Burns 1980 Supp.).

■ Thus, it is the duty of the owner and the keeper of the animal to keep him confined, and the mere possession or ownership of land from which an animal strays is not sufficient to make the landowner liable, so long as the landowner is not the keeper of such animal. This is and has always been the law in Indiana. *See Cook v. Morea,* (1870) 33 Ind. 497. If the landowner is neither the owner nor keeper, he has no duty to confine or restrain the animal. If an animal is allowed by its keeper to escape from its confinement and harm results, that damage results from the negligent confinement, not from the condition of the land. To the extent that the condition of the land made it inadequate or unsuitable for confinement, the responsibility for selecting an adequate method of confinement is upon the keeper, not upon the landowner who neither owned nor kept the animal. *See Grigg v. Southern Pacific Co.,* (9th Cir. 1957) 246 F.2d 613, *reh. denied,* 248 F.2d 949; *Heyen v. Willis,* (1968) 94 Ill.App.2d 290, 236 N.E.2d 580. *See generally* 59 A.L.R.2d 1328, 1341, 1343; 4 Am.Jur.2d *Animals,* § 92.

■ The fact that Dunn Farms, in the person of one or more of their officers, had casually observed horses in the field on their property created no duty in them to be concerned that the horses might escape and cause injury; thus, Dunn Farms had no duty to take action to prevent or guard against such an occurrence. First, of course, domestic animals in a farm field do not present an unusual situation, or one which causes concern that a dangerous condition might be present, such that we can expect a reasonable person to make an immediate inspection of the property to determine if the enclosure is properly fenced to prevent such an eventuality. Moreover, in the case before us, under the terms of the lease that Dunn Farms had with these tenants, the tenants were to keep the place in repair, including the fences. Additionally, it appears that Dunn Farms contemplated a use of the property which did not require fencing, since Dunn Farms was not keeping

any animals for its use on the property. These animals belonged to a sub-tenant of the tenant to which Dunn Farms was leasing. Dunn Farms had no knowledge of the bad condition of the fences, and had no reason to inspect them to determine their condition. In fact, as noted above, under the terms of McConnell's lease, the tenant was to keep the property, including the fencing, in good and usable repair.

The facts in this case do not bring it within the rule set out in *Pitcairn v. Whiteside*, (1941) 109 Ind.App. 693, 34 N.E.2d 943, where it was held to be the duty of a property owner adjacent to a highway to exercise reasonable care to prevent injury caused by the property's defective or dangerous condition. The defective or dangerous condition in *Pitcairn* was heavy smoke going across the traveled portion of the highway, caused by a railroad, through its employees, in burning off the right-of-way. We emphasize that in that case, the railroad itself was causing the dangerous condition that visited itself upon the traveled portion of the highway. This condition was heavy smoke, which billowed across the roadway so that drivers collided because they could not see other vehicles through the smoke. In that case, the dangerous condition existed for several hours throughout the day, with no effort on the part of the railroad employees to flag down moving vehicles approaching the smoke, or in any way to warn them of the dangerous condition.

Though we agree with the decision in *Pitcairn,* that case in no way parallels the facts and circumstances in the case before us. Here, the owner of the property had no relationship to the agency causing the problem, and no duty to investigate to determine if there was a problem, emergency, or dangerous condition. To hold otherwise would place a duty on a property owner to continually inspect the perimeters of his property, particularly along an adjacent highway, to make sure that dangerous conditions do not arise for those traveling on the highway.

■ Further, we must totally reject the conclusion of the Court of Appeals that the duty of a landowner to a person on an adjacent road is similar to that of a landowner to a business invitee. The duty of the business property owner to an invitee is an extra burden based on the relationship of the owner or occupier of the land to the one he invites for the benefit of the owner or occupier. Virtually every useable piece of property in the State of Indiana is adjacent to a roadway or highway. The road is a means of common ingress and egress to all of the properties along the highways, for this property owner and all other property owners. A particular landowner does not invite all persons using the highway for their own purposes to make that use or traverse that part of the highway adjacent to his own property.

■ Therefore, the holding in *Siegel v. 1536–46 St. John's Place Corp.,* (1945) 184 Misc. 1053, 1054–55, 57 N.Y.S.2d 473, 474, relied on by the Court of Appeals, has no applicability to this case. In *Siegel,* the defendant was a corporate landlord of apartments in which a corporation employee kept a vicious dog that harmed one of the tenants. Liability was based on the use of the land and the relationship between the damaged party and the corporate owner, not merely on ownership of the land. The same is true in *Parr v. McDade,* (1974) 161 Ind.App. 106, 314 N.E.2d 768, where the parties had a landlord tenant relationship, and damage to a tenant from fire was caused by the landlord's employee on the premises. *See also Fletcher v. Baltimore & P. R. Co.,* (1897) 168 U.S. 135, 18 S.Ct. 35, 42 L.Ed. 411. It is well settled that a business invitor owes a higher duty to those he invites on the property than he owes to one who is a trespasser or a licensee. *Hammond v. Allegretti,* (1974) 262 Ind. 82, 311 N.E.2d 821.

For all the foregoing reasons, opinions of the Court of Appeals are vacated and the trial court is affirmed.

GIVAN, C. J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

Dunn Farms, Inc., was in the business of renting farms with fenced lots for enclosing domestic animals. The lot from which the animal escaped in this case had been rented to a tenant who had let it to a sub–tenant. The tenancy expired and the lot and fences were surrendered to Dunn. Upon taking it back Dunn discovered that domestic animals had been left in the lot by the former tenant. The fences enclosing the lot had become deteriorated and an animal strayed across them into the public thoroughfare causing severe injury to a passer–by. At common law the owner or keeper of domestic animals having the propensity to rove have a duty to confine them. *Myers v. Dodd*, (1857) 9 Ind. 290; *Cook v. Morea*, (1870) 33 Ind. 497. More recently that duty is placed upon persons "responsible for a domestic animal." Ind. Code § 15–2.1–21–8. Also Ind. Code § 15–2–4–21, now repealed.

Dunn, as occupier of the land and fences at the time the animal strayed into the public road had authority to repair the fences or remove the animals. It had charge of the land upon which the animals stood, the fences which served to enclose them, the ingress and egress of the lot and thereby the availability of any food or water to them. It knew the animals were present. It was therefore in control and charge of them. As far as the public is concerned, Dunn should be considered the keeper of the animal which strayed into the path of the plaintiff's car or in the alternative Dunn was responsible for the animal. I cannot therefore concur with the majority view that Dunn had no legal duty to protect others from its natural propensities. Neighbors and other concerned citizens could not lawfully go on the Dunn property to feed and water the animals and repair the fences so as to keep them from straying onto the road. These were not domestic animals which had strayed onto the Dunn land from adjoining lands of others. They were not wild animals. These were domestic animals left as a dangerous by–product of the rental business of the Dunn Farms, easily controlled and rendered harmless by proper care and fencing.