*Deveneau v. Weilt*, No. 321-9-12 Bncv (Wesley, J., Aug. 12, 2014).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

SUPERIOR COURT                                                                          CIVIL DIVISION
Bennington Unit                                                                        Docket No. 321-9-12 Bncv

| Deveneau vs. Weilt et al |
|---|

# ENTRY REGARDING MOTION

Count 1, Personal Injury - Auto (321-9-12 Bncv)
Count 2, Personal Injury - Auto (321-9-12 Bncv)

Title:          Motion for Summary Judgment (Motion 10)
Filer:          Brian Toomey
Attorney:    Leo A. Bisson
Filed Date:  June 26, 2014

Response filed on 07/31/2014 by Attorney Ronald F. Wright for Plaintiff William Deveneau

**The motion is GRANTED.**

### Opininon and Order
### Granting Defendant's Motion for Summary Judgment

Plaintiff was injured when he struck a horse while driving on Vermont Route 7A in the early morning of November 30, 2009. The horse belonged to Susan Wielt, who leased a house and land from Brian Toomey. Plaintiff sued Wielt and Toomey for negligence. Toomey moved for summary judgment arguing he had no duty to keep the horse enclosed or to prevent its escape. The Court grants summary judgment because a landlord who does nothing more than lease property to a tenant with permission to keep livestock on the premises does not have a duty to keep the tenant's livestock enclosed, especially when the undisputed facts fail to establish any knowledge by landlord that would reasonably portend a dangerous circumstance.

Factual Background

The following facts taken from the summary judgment record are undisputed. Susan Wielt leased land and a house from Brian Toomey at 1900 Harwood Hill in Bennington, Vermont. The lease did not include access to a neighboring lot at 1952 Harwood Hill. Toomey later allowed Wielt to use the lot at 1952 Harwood Hill. Toomey also gave Wielt permission to keep horses on the lots on the condition that Wielt took responsibility for all care of the horses. Wielt kept two horses on the lots, an Arabian mare and a thoroughbred ex-racehorse. Wielt alternated the lots in which she pastured the horses based on the amount of grass available.

Wielt used a temporary electric fence to keep the horses in the lots. The fence consisted of two strands of nylon wire attached to fiber glass posts. The posts are approximately five feet high and Wielt drove the posts approximately six inches into the ground. The fence used a single strand of nylon wire on portions used as gates. Wielt and her children constructed and maintained the fence.

Toomey had little involvement with the horses. Toomey walked by the horses and the fence on his way to grocery store. He did not inspect or maintain the fence, nor was he knowledgeable as to the design and construction of the fence. Toomey did not ride or use the horses. Toomey occasionally threw fallen apples from nearby apple trees into the pasture. Toomey had no knowledge of any instance during which a horse escaped, or any time when the fence was in disrepair, prior to November 30, 2009.

Plaintiff, William Deveneau, was a Vermont State Trooper stationed at the Shaftsbury barracks. Around 1 a.m. on November 30, 2009, Plaintiff drove south on Vermont Route 7A. When Plaintiff saw a moose-like animal in the road, he swerved and hit his brakes, but could not avoid colliding with the animal. As a result of the collision, the animal crushed the windshield and the top of Plaintiff's cruiser and injured Plaintiff. Plaintiff later discovered that the animal was Wielt's thoroughbred.

The record does not include sufficient undisputed evidence establishing how the horse escaped the fenced-in lot. The responding officers observed a gate was down and the wire sagged on parts of the fence at 1952 Harwood Hill. At least in part, the fence was electrified through solar power. However, the record does not establish whether the fence circulated electricity at the time of the collision.

Procedural History

On June 25, 2014, Toomey moved for summary judgment. Toomey argues that as a lessor, he had no duty to prevent harm to Plaintiff. That is, Toomey asserts that he had no duty to inspect or maintain the fences to prevent Wielt's horses from escaping and wandering onto the road. On July 31, 2014, Plaintiff opposed Toomey's motion for summary judgment.[1] Plaintiff argues ordinary principles of negligence apply, according to which a landowner has a duty to prevent animals from escaping from the landowner's property and injuring motorists. Plaintiff further argues that maintaining livestock poses foreseeable risks, and that landowners have a duty to contain dangers within their property, even if livestock is maintained by a tenant.

Standard of Review

---

[1] Plaintiff filed his opposition late. A party has 30 days from the time of filing to oppose summary judgment. *See* V.R.C.P. 56(b). Toomey filed the motion for summary judgment on June 25, 2014. On July 28, 2014, Plaintiff filed a motion to continue responsive deadlines. The Court denied Plaintiff's motion on July 29, 2014. Plaintiff filed his opposition two days later. Counsel should not assume the Court will grant continuances and should not wait until after a deadline passes to file a motion to continue. Nevertheless, the Court exercises its discretion to consider the untimely motion due to the complexity of the issues involved and due to only a brief period of untimeliness. *See Smith v. Cent. Vt. Hosp., Inc.*, 2004 VT 113, ¶¶ 10–11, 177 Vt.640 (mem.) (noting the trial court has discretion to consider untimely filings); *see also Wetherby v. Vincent*, No. 2007-276, 2008 WL 2811202, at *1 (Vt. Mar. 2008) (describing the trial court's discretion to consider an untimely summary judgment motion).

The Court grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). The Court makes all reasonable inferences and resolves all doubts in favor of the non-moving party. *Lamay v. State*, 2012 VT 49, ¶ 6, 191 Vt. 635.

Discussion

The issue whether a landowner who leases property to a tenant has a duty to prevent harm to third parties from the tenant's livestock wandering off of the property and onto a road has not been squarely addressed by the Vermont Supreme Court.[2] However, in a case resulting in an unpublished Supreme Court ruling, this Court has previously examined the nature of the duty to restrain livestock on the part of a livestock owner. In *Morrissey v. Carroll*, a plaintiff sued the owner of a sight-impaired horse for injuries she sustained when it escaped. *See* No. 327-10-03 Bncv, 2004 WL 5452842 (Vt. Super. Ct. Sept. 28, 2004) (Carroll, J.). This Court ruled the escape of the horse did not give rise to strict liability, but it denied the defendant's motion for judgment on the pleadings as to the plaintiff's negligence claim. *Id.* Subsequently, however, this Court (Wesley, J.) granted summary judgment to the defendant, which the Vermont Supreme Court affirmed. *See Morrissey v. Carroll*, No. 2006-074, 2006 WL 5838197, at *3 (Vt. Nov. 2006).

The decision turned on the prior holding in *Zukatis v. Perry*, 165 Vt. 298 (1996), in which the Supreme Court affirmed summary judgment in favor of the owner of a horse that had kicked a trespassing child, relying on the "general rule",

> the keeper of a domestic [animal] is not liable for injuries to persons and property unless the owner had some reason to know the animal was a probable source of danger. Stated another way, liability attaches only when the [animal]'s past behavior has been such as to require a person of reasonable prudence to foresee harm to the person or property of others.

*Id.* at 303. In *Morrissey*, the Court held that, notwithstanding the expert veterinary opinion proffered by the plaintiff that sight-impaired horses are prone to startle, the defendant owner had no duty because there was no evidence that her horse had ever responded in that fashion previously.

Under the common law, a person has a duty to act as a reasonably prudent person would in similar circumstances. *Edson v. Barre Supervisory Union No. 61*, 2007 VT 62, ¶ 10, 182 Vt. 157. That rule applies as well to cases involving claims of negligence involving livestock.

> The ultimate question in determining actionable negligence is whether a prudent person, in like circumstances, would have reasonably anticipated the harm. See *Schaad v. Bell Atlantic NYNEX Mobile, Inc.*, 173 Vt. 629, 631 (2002) (mem.) ("A longstanding principle of Vermont law is that a claim under the ordinary theory of negligence must establish that the defendant had knowledge or foresight, or reasonably could be chargeable with knowledge.")

---

[2] A few Vermont cases discuss the liabilities when a horse escapes near a railroad track, but none resolve this case. *See, e.g., Delphia v. Rutland R.R. Co.*, 76 Vt. 84, 86–87 (1903); *Holden v. Rutland & Burlington R.R. Co.*, 30 Vt. 297, 301 (1858).

*Morrissey* at ¶ 2. Nonetheless, as demonstrated by that holding, and the ruling by the full court in *Zukatis*, even as to the owner of livestock, a duty only arises based on circumstances involving an animal's past behavior that make foreseeable the possible risk of harm. It follows that any duty claimed against a landlord without any ownership interest in livestock pastured on leased property must be based on a similar foundation, and take into account facts showing such landlord's attenuated relationship with the offending animal.

In regard to Plaintiff's claim as to Toomey's negligence related to inadequate fencing, other jurisdictions split over whether a landowner has a duty to inspect or maintain the fence for a tenant's animals. *See Blake v. Dunn Farms, Inc.*, 413 N.E.2d 560, 563 (Ind. 1980); *Hastings v. Sauve*, 989 N.E.2d 940, 942 (N.Y. 2013); *see also* James L. Rigelhaupt, *Liability of person, other than owner of animal or owner or operator of motor vehicle, for damage to motor vehicle or injury to person riding therein resulting from collision with domestic animal at large in street or highway*, 21 A.L.R.4th 132, §§ 4[a],[b] (discussing approaches in different states). In *Blake*, a car struck a horse that wandered onto a road at night. 413 N.E.2d at 562. The plaintiff sued the owner of the horse and the landlord. *See id.* The court ruled an owner of an animal has a duty to keep that animal confined. *Id.* at 563. However, "[i]f the landowner is neither the owner nor keeper, he has no duty to confine or restrain the animal." *Id.* Knowledge that a tenant keeps a horse on the landowner's property does not generate a duty. *See id.* at 563–64. Where the tenant agreed to maintain the fences, the landlord had no duty to monitor those fences. *Id.*

The New York Court of Appeals came to an opposing holding. *See Hastings*, 989 N.E.2d at 942. In *Hastings*, the plaintiff was injured when her van hit a cow on a road. *Id.* at 941. The plaintiff sued both the tenant, who owned the cow, and the landowner. *Id.* Applying principles of common law negligence, the court held "a landowner or the owner of an animal may be liable under ordinary tort-law principles when a farm animal… is negligently allowed to stray from the property on which the animal is kept." *Id.* at 942.

Review of cases in other jurisdictions suggests the existence of a landowner's duty depends on the facts of the case. For example, the North Carolina Supreme Court allowed a case to go forward against a landowner where a mule escaped and motorist collided with the mule. *See Sutton v. Duke*, 176 S.E.2d 161, 162, 169–70 (N.C. 1970). The court affirmed a denial of a motion to dismiss because it lacked knowledge about the landowner's involvement with the mules. *See id.* at 169–70. On the other hand, the Iowa Supreme Court affirmed a grant of summary judgment to a landowner where the parties admitted the landowner had no duty to fence the livestock. *See Jacobs v. Stover*, 243 N.W.2d 642, 644 (Iowa 1976).

In this case, the Court concludes that Plaintiff has shown no facts from which it could be inferred that Toomey had a duty to inspect or maintain the fences, or otherwise prevent Wielt's horses from escaping. Toomey allowed the horses onto his property on the condition that Wielt care for the horses and maintain the fence. Toomey had little involvement with the horses and no knowledge of defects in the fence. Further, there is no evidence of Toomey's knowledge or notice of previous instances where the horses escaped from the fence. The situation is similar to that in *Blake* and *Jacobs* in which the tenant assumed responsibility to maintain the fence. *See Blake*, 413 N.E.2d at 563–64, *Jacobs*, 243 N.W.2d at 644. The situation is dissimilar from the motion to dismiss in *Sutton* because here the Court assesses the existence of duty based on a full summary judgment record, which demonstrates no knowledge or involvement by Toomey

4

sufficient to give rise to any duty. *See* 176 S.E.2d at 162, 169–70. The holding in *Hastings* similarly offers little reasoning in support of the opinion and few facts by which this court could compare the cases. *See* 989 N.E.2d at 941–42.

Plaintiff also argues the Restatement creates liability under these circumstances. *See* Restatement of Torts (Second) § 379A. Under the Restatement, a landowner may be liable for the actions of the tenant if the landlord knows of the actions and the actions involve an unavoidable and "unreasonable risk." *Id.* A Colorado court applied this section to deny summary judgment to a landowner where a plaintiff struck a tenant's escaped horse. *See Gonzales v. Bierman*, 773 P.2d 629, 630–31 (Colo. Ct. App. 1989). The landowners also knew the fence was in poor condition. *Id.* at 630. This Court does not find pasturing a horse involves an "unreasonable risk." Vermont is an agricultural state, and the Court will not hold that mere permission by a landlord to allow a tenant to board horses imputes to the landlord knowledge and responsibility for guarding against an inherently unreasonable risk to motorists. Toomey had no duty to inspect and maintain the fences for Wielt's horses.[3]

Finally, Plaintiff argues the unreasonable risk posed by Wielt's horses made Toomey chargeable with inspecting the fence to determine its capacity to adequately ensure that the horses remained enclosed. Plaintiff cites *Cameron v. Abatiell* to support his position. *See* 127 Vt. 111,118 (1968). In *Cameron*, a police officer fell on a poorly maintained wooden stair case. *Id.* at 112. The Vermont Supreme Court held that a landowner must exercise reasonable care to discover defects on the property. *Id.* at 118.

*Cameron* does not support recognition of a duty for Toomey to inspect the fence. First, *Cameron* relies on the concept of obligations to a business visitor or invitee. *See id.* at 115, 118. The Vermont Supreme Court recently removed the concept of the business visitor from Vermont law, which undermines the foundation of *Cameron*. *See Demag v. Better Power Equip., Inc.*, 2014 VT 78, ¶ 27. Instead, Vermont imposes a duty of the reasonably prudent person. *Id.* In that regard, this case is distinguishable from *Cameron* because it involves a fence rather than a set of stairs. *See* 127 Vt. at 112. The foreseeability of the danger associated with a faulty stairway is significantly greater than that associated with inadequate fencing. Further, the imposition of a duty to inspect and maintain a tenant's fence would distort the contractual relations between landlord and tenant beyond reasonable bounds, requiring a landowner to regularly walk the tenant's property and look at each section of the fence. This conclusion arises from existing caselaw governing the duty of the owner of livestock to control and restrain the animals, a duty which is plainly higher than any that could be imputed to a non-owner landlord. Thus, a reasonably prudent landowner does not have a duty to inspect or maintain fences erected by a tenant for the tenant's horse, absent some showing of facts making it foreseeable that the horse might escape. *Zukatis*, 159 Vt. at 303. Plaintiff has failed to make that showing here and Defendant's motion for summary judgment must be granted.

---

[3] The Court also rejects Plaintiff's contention that a landowner's duty to prevent harm to the public abutting a roadway created a duty for Toomey to inspect or maintain Wielt's fence. See *Murray v. Nelson*, 97 Vt. 101 (1923). *Murray* concerned a pipe that burst and created icy conditions on a sidewalk, which later harmed the plaintiff. Id. at 105–06. A defendant who artificially collects water cannot allow that water to escape onto the street. Id. at 107. Plaintiff's case against Toomey is not similar to *Murray* because water presents a different type of risk than horses. Containment of water has its own body of law. See, e.g., *S.L. Garand Co. Everlasting Mem. Works, Inc*., 128 Vt. 359, 362 (1970) (describing neighbor's right to protection against destructive discharge of water).

## Order

**WHEREFORE,** it is hereby **ORDERED** :The Court **GRANTS** Toomey's Motion for Summary Judgment, and Plaintiff's complaint against Toomey is **DISMISSED**.


Electronically signed on August 12, 2014 at 03:45 PM pursuant to V.R.E.F. 7(d).

_____
John P. Wesley
Superior Court Judge


Notifications:
Ronald F. Wright (ERN 5341), Attorney for Plaintiff William Deveneau
Michael J. Gannon (ERN 3738), Attorney for Defendant Susan Weilt
Leo A. Bisson (ERN 2369), Attorney for Defendant Brian Toomey
Kerby John Wright (ERN N/A), Attorney for party 1 Co-Counsel