ANTHONY RONDINELLI *v.* JESSIE M. HARMON BOWDEN.

[No. 3-672A19.  Filed March 22, 1973.]

584

*Saul L. Ruman,* of Hammond, for appellant.

*Robert D. Hawk, Spangler, Jennings, Spangler & Dougherty,* of counsel, of Gary, for appellee.

HOFFMAN, C.J.—The issue presented by this appeal is whether the damages awarded plaintiff-appellant Anthony Rondinelli were inadequate.

On December 30, 1966, an automobile driven by Anthony Rondinelli was struck in the rear by an automobile driven by defendant-appellee Jessie M. Harmon Bowden. The instant action was instituted by Rondinelli filing his complaint for personal injuries alleging, *inter alia,* the negligence of Mrs. Bowden in the operation of her automobile. Judgment was prayed for in the amount of $100,000. Special damages sustained by Rondinelli were later shown to be approximately $4,500. Following a change of venue the cause was tried to

a jury which returned its verdict, finding for plaintiff-Rondinelli and against defendant Bowden and assessing plaintiff's damages in the sum of $5,000. Judgment was entered on the verdict. Plaintiff-Rondinelli timely filed his motion to correct errors which was overruled by the trial court and this appeal followed.

On appeal the liability of Mrs. Bowden is unquestioned. Rondinelli only questions the sufficiency *vel non* of the judgment.

To determine if the verdict is inadequate the same rules must be applied as if the verdict were being challenged as excessive. In *Henschen* v. *New York Cent. R. Co.* (1945), 223 Ind. 393, at 399, 400, 60 N.E.2d 738, at 740, it is stated:

"Aside from cases where damages are a mere matter of computation this court will reverse a cause for excessive damages only where, after examining the evidence concerning the injuries, it is apparent that the amount of damages assessed by the jury is so large as to indicate that the jury in assessing the amount was motivated by prejudice, passion, partiality or corruption, or considered some improper element. (Citing authorities.)
* * *

"In a case of this kind the extent of the compensation is largely a jury question and does not admit of fixed rules and mathematical precision." See also: *Green* v. *Oakley* (1969), 145 Ind. App. 307, 310, 311, 250 N.E.2d 594, 596, 597.

Rondinelli raises certain issues which he argues impeded the fairness of the trial and were responsible for the inadequacy of the verdict.

The first issue argued by Rondinelli is,

"1. The Court erred in permitting appellee's counsel to cross-examine appellant concerning other accidents in which plaintiff had been involved when plaintiff had testified on direct examination he had not been injured in any of the said accidents."

The record before us indicates that Rondinelli was cross-examined about three accidents—one occurring in 1946, one occurring in 1959, and one occurring in 1969.

The general subject of other accidents was opened during the direct examination of Rondinelli when he testified that he was involved in accidents in 1946 and 1969 but that he was not injured in either accident.

In Indiana, where the direct examination of a witness opens up a general subject, the cross-examiner may ask any relevant question on the general subject. *Brindle* v. *Harter* (1965), 138 Ind. App. 692, 697, 211 N.E.2d 513 (transfer denied), *Vogel* v. *Harris, et al.* (1887), 112 Ind. 494, 14 N.E. 385. Thus, the question becomes whether evidence of these three other accidents is relevant to the issue of damages in the instant case.

The general rule is that cross-examination and other evidence is admissible to lay a basis for impeachment or show that the injury complained of is due to some other cause where the present injury and the prior injury or condition are similar, or where a causal relationship between them can be shown. Anno., 69 A. L. R. 2d 593 (1960). Evidence concerning prior injuries must be elicited in good faith; not for the purpose of prejudicing the jury. *Gordon* v. *Checker Taxi Co.* (1948), 334 Ill. App. 313, 79 N.E.2d 632. Where the cross-examiner fails to come forward with evidence showing a logical nexus or causal relationship between the injury sued on and the prior injury or condition, the evidence will be subject to a timely motion to strike. *Caley* v. *Manicke* (1961), 29 Ill. App. 2d 323, 173 N.E.2d 209. The test of admissibility is not probability, but possibility, *i.e.,* testimony as to a prior accident is relevant where there is competent proof from which it could be inferred that the injury complained of is attributable to the prior or subsequent event. *Paxton* v. *Misiuk* (1961), 34 N. J. 453, 170 A. 2d 16.

The cross-examination concerning the 1946, 1959 and 1969 accidents was proper and the testimony elicited was admissible if Bowden subsequently met her burden of going forward with the evidence by showing the relevance of the questions asked on cross-examination. The burden was on Bowden, the cross-examining party, to "connect up" the other accidents to the injuries sued for.

The evidence contained in the record before us shows that approximately one-half hour after the accident on December 30, 1966, Rondinelli developed a headache. As time went by Rondinelli began to experience tingling and numbness in his hands and intermittent shooting pains down his arms. Just prior to February 10, 1967, approximately five weeks after the accident, Rondinelli saw a doctor for the problems he was experiencing. He was then referred to a neurosurgeon. Rondinelli was treated in the hospital for a narrowing between the fifth and sixth cervical vertebra but would not submit to an operation.

There is testimony that Rondinelli worked every day between 1967 and 1970. In 1969, Rondinelli was involved in another accident when the right rear fender of his automobile was struck by another car as he was attempting to make a left turn. Approximately one year after the 1969 accident Rondinelli entered the hospital for an operation.

Dr. Saavedra, a neurosurgeon who was called as a witness for the plaintiff, testified that he first saw Rondinelli on February 10, 1967, upon referral by Dr. Lewis. Dr. Saavedra placed Rondinelli in the hospital for tests which showed he had "a filling defect" and a "narrowing between the 5th and 6th vertebra of the neck." Dr. Saavedra suggested that Rondinelli have an operation, however, Rondinelli elected to have treatments consisting of analgesics, pain killers, physical therapy and traction. Dr. Saavedra testified that his findings were compatible with a pinched nerve or displaced cervical disc.

After Rondinelli was released from the hospital on February 28, 1967, Dr. Saavedra saw him again on May 2, 1967, and July 5, 1967. Dr. Saavedra did not hear from Rondinelli again until October 23, 1970. On November 2, 1970, Rondinelli was admitted to the hospital for an operation. Tests conducted at that time showed "more abnormalities" than in 1967, with narrowing between the 5th and 6th cervical vertebra and the 6th and 7th cervical vertebra. Dr. Saavedra stated his opinion that the injuries seemed to be due to the 1966 accident. There is also evidence that a pinched nerve could be caused by a hypertrophic spur formation.

Dr. Leo Roth, an orthopedic surgeon called as a witness for the defendant, testified that he examined Rondinelli on August 25, 1967. Dr. Roth testified as to his opinion that the narrowing of the intervertebral disc space between the 5th and 6th cervical vertebra with spur formation and the narrowing between the 6th and 7th cervical vertebra existed before the accident on December 30, 1966. Dr. Roth also testified that a spur formation can be caused by a single auto accident if an accident is severe enough and enough time (four or five years) passes. Dr. Roth also testified that the narrowing of the intervertebral disc spaces in most instances is due to normal wear and tear that occurs with aging.

As hereinabove stated, the burden of going forward with the evidence was on appellee-Bowden to show the link between the other accidents or conditions and the damages sued for, thus showing the relevance of the evidence concerning the other accidents. Here, the medical evidence was unable to pinpoint the problem or the cause thereof. It is inferrable from the evidence that the neck injury for which Rondinelli had an operation in 1970 was caused by the trauma of the automobile accident in 1966, natural wear and tear, a series of trauma or a combination of all of these causes. Evidence of other trauma and natural conditions was relevant because of the uncertain cause of the injury. The question was peculiarly one for the jury. The trial

court did not err in permitting cross-examination of the plaintiff with regard to the other accidents. Nor was there error in permitting the investigating police officer of the 1969 accident to testify.

The second issue argued by Rondinelli is whether the court erred in giving the jury defendant's Instruction No. 3:

> "If you find from a consideration of all of the evidence in this cause that the condition which the plaintiff, Anthony Rondinelli, complains of in this cause existed prior to the collision, or developed subsequent thereto from causes unrelated to the collision or occurred as a direct result of a subsequent event or combination of events or any other cause independent of the collision in issue, then you should not consider such condition or alleged injury in your deliberations."

In Indiana, a wrongdoer is generally said to be liable for all injuries proximately resulting from his wrongful act. *Northern Ind. Public Service Co.* v. *Robinson* (1939), 106 Ind. App. 210, 18 N.E.2d 933.

In *The Louisville, New Albany and Chicago Railway Company* v. *Jones* (1886), 108 Ind. 551, at 560, 9 N.E. 476, at 480, it is stated:

> "In all cases, where injuries have resulted to one from the wrongful or negligent acts of another, the courts should see to it that the party thus in fault shall respond in such an amount as will, as far as possible, compensate the injured party for all such injuries as may be properly attributed to such wrongful or negligent acts. And as clearly, courts and jurors should see to it that parties accused, and guilty, of negligence, shall not be compelled to respond in damages for injuries which are not properly attributable to such negligence."

In the instant case, two instructions were given to the jury on the issue of damages—the one hereinabove set forth and the court's Final Instruction No. 12 which reads, in pertinent part, as follows:

> "If you find for the plaintiff on the question of liability, you then must determine the amount of money which will fairly compensate the plaintiff for those elements of damage

which were proved by the evidence to have resulted from the negligence of the defendant. * * *."

Where an instruction is not mandatory in nature, it must be considered with all of the other instructions given to the jury. *Lamb* v. *York* (1969), 252 Ind. 252, 247 N.E.2d 197, 206. An erroneous instruction is not cured by the giving of a contradictory, but correct instruction. *Deckard* v. *Adams* (1965), 246 Ind. 123, 203 N.E.2d 303. However, where an instruction is not mandatory, ambiguity, inaccuracy or incompleteness of one instruction may be cured by another instruction not inconsistent therewith. *Shelby National Bank Adm.* v. *Miller* (1970), 147 Ind. App. 203, 259 N.E.2d 450, 464 (transfer denied).

Although the instruction complained of is incomplete and is far from being a model of clarity when read by itself, it is clarified and completed when read together with the court's Instruction No. 12. A jury of ordinary intelligence could not have been confused or misled as to the proper measure of damages when both instructions were read. See: *Merriman* v. *Kraft* (1969), 253 Ind. 58, 71, 249 N.E.2d 485, 493.

Appellant-Rondinelli argues the following contentions:

"4. The court erred in instructing the jury on sudden emergency where there was no evidence to show that appellee was faced with a sudden emergency not of her own making and where it fails to take into consideration appellee's whole course of conduct.

"5. The court erred in instructing the jury that road conditions could be considered the sole proximate cause of the accident without giving consideration to appellee's total conduct preceding the accident.

\* \* \*

"7. The court erred in giving instructions concerning contributory negligence and on the proper stopping of a vehicle upon a highway when there was no probative evidence of contributory negligence on the part of the appellant nor no probative evidence of any improper stopping of his vehicle by the appellant."

It is well settled that the giving of an instruction upon which there is no evidence is error. *Lamb* v. *York, supra.* Such error does not require reversal where no prejudice resulted to appellant. *Baker* v. *Mason* (1968), 253 Ind. 348, 351, 242 N.E.2d 513, 515. The point of inquiry in determining whether erroneous instructions are prejudicial is whether the jury was misled. *Paxton* v. *Ferrell* (1969), 144 Ind. App. 124, 129, 244 N.E.2d 439, 442.

Here, there is no possibility that the jury was misled on these issues because the issue of liability was decided in favor of plaintiff-Rondinelli by the jury. As heretofore stated, the negligence of defendant Bowden is not questioned in this appeal. The doctrines of proximate cause, sudden peril or sudden emergency and contributory negligence all go to the issue of liability.

The next issue argued by Rondinelli is whether "[t]he court erred in permitting defendant to call as a witness a weather reporter whose testimony did not have any bearing on the issues."

The witness testified that he was an Official Observer for the United States Weather Bureau at Ogden Dunes, Indiana, on the date of the accident. The weather station was approximately 8 to 10 miles from the site of the accident. The substance of his testimony concerned the weather conditions on days surrounding December 30, 1966.

The objection made by the plaintiff to permitting such testimony was that it was not material or relevant. The trial court overruled the objection.

We agree with the trial court that in relation to the issues in this particular cause of action the evidence of weather conditions at the weather station was relevant and material. Records kept by weather officials in the course of their duties are competent to prove weather conditions at a given time in the vicinity of the place

where the record is kept. *City of Garrett* v. *Winterich* (1909), 44 Ind. App. 322, 87 N.E. 161 (transfer denied). See also: Anno., 34 A. L. R. 2d 1249 (1954). We are not unmindful that a case might exist where the remoteness of the place of recordation would bar the admission of such evidence, but the case at bar does not fall within this category. The distance between the weather station and the accident site under the particular facts at bar went only to the weight to be given to the evidence.

The three volumes of transcribed testimony contained in the record before us have been carefully reviewed. It cannot be said, as a matter of law, that the trial was unfair or that under the guidelines of *Green* v. *Oakley, supra*, the damages awarded were inadequate. Cf. *Schutz* v. *Rose* (1964), 136 Ind. App. 165, 196 N.E.2d 285 (transfer denied), a factually similar case wherein no damages for personal injuries were awarded.

Finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.

Sharp and Staton, JJ., concur.