**RELIABLE DEVELOPMENT CORPORATION d/b/a The Fitness Barn, Appellant–Defendant,**

v.

**Christopher BERRIER, Appellee–Plaintiff.**

No. 64A03–0406–CV–296.

Court of Appeals of Indiana.

July 31, 2006.

Rehearing Denied Oct. 16, 2006.

Todd J. Kaiser, Matthew S. Effland, Ogletree Deakins Law Firm, Indianapolis, IN, Attorneys for Appellant.

Kenneth J. Allen, Michael T. Terwilliger, William Lazarus, Kenneth J. Allen & Associates, P.C., Valparaiso, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

*Case Summary and Issue*

Reliable Development Corporation ("Reliable") d/b/a The Fitness Barn ("Fitness Barn") appeals after a jury trial in which

Reliable was assigned ninety percent of the fault for causing Christopher Berrier to sustain a lower back injury when he fell while running on a treadmill. The jury awarded damages totaling $9,000,000, of which $8,100,000 was apportioned to Reliable. On appeal, Reliable raises six issues for review, one of which we find dispositive, namely whether the trial court properly prevented Reliable from cross-examining Berrier's medical expert witnesses about prior back injuries. Defendants in personal injury actions are entitled to challenge a plaintiff's expert with respect to the accuracy, consistency, and credibility of that expert's causation opinions, including through vigorous cross-examination. For this reason, we conclude that the trial court went too far in prohibiting Reliable from cross-examining Berrier's medical experts about his prior injuries, and therefore reverse and remand for a new trial.[1]

### Facts and Procedural History

The Fitness Barn is a health club owned and operated by Reliable in Porter County, Indiana. On October 28, 1998, while running on one of the Fitness Barn's treadmills, Berrier suffered an injury to his lower back when the machine unexpectedly came to a stop, causing him to fall. Berrier had pain in his lower back and right leg, but did not seek medical attention until six days later, which was his first opportunity to see his doctor. In the meantime, Berrier continued working at his physically demanding job.

Berrier's condition has persisted and worsened since October 28, 1998, with periods of improvement followed by a return of pain in his lower back. After his initial consultation and referral to a spine specialist on November 3, 1998, Berrier participated in physical therapy and was administered an epidural injection into his lower spine for pain relief. On November 11, 1998, Berrier underwent surgery to remove a portion of a disc from his spine. With continued physical therapy, Berrier was able to return to work in March of 1999. Within a few months, the pain returned to Berrier's lower back, which he reported as beginning in May of 1999. Between November 17 and December 27, 1999, Berrier met three times with a neurosurgeon, who eventually implanted a spinal cord stimulator in Berrier's back on March 8, 2000. Berrier's pain lessened, and he competed in a 5K run on December 16, 2000. His condition worsened again, however, requiring surgery on March 20, 2002, in which several vertebrae in Berrier's lower back were fused together. At the time of trial, Berrier's doctors considered him permanently disabled, but he continued working despite chronic pain.

Berrier filed a complaint in this matter on October 19, 1999, naming as defendants QIC Holding Company ("QIC") and Reliable Development Corporation. Prior to trial, QIC settled with Berrier and was listed as a non-party. Prior to jury selection and presentation of evidence, Berrier filed a motion in limine requesting that the trial court disallow evidence he considered inadmissible and prejudicial. This included testimony, evidence, or argument that

---

1. Because we reverse and remand on the issue of cross-examination of Berrier's medical expert witnesses, we do not reach Reliable's other contentions regarding juror misconduct and bias or jury instructions.

 In addition, we hereby deny Berrier's Motion to Strike Appellant's Statement of Facts, as well as his Verified Motion for Sanctions. With regard to the latter, we note that it is predicated upon a reviewing doctor's written opinion of the case. This document was not entered into evidence at trial and was not part of the appellate record. Moreover, neither party can definitively say, without making assumptions we will not entertain, which documents the doctor reviewed and relied upon in his assessment.

Berrier "suffered any injury or accident before or after" his fall from the treadmill, that Berrier had "any prior or subsequent illness(es) or condition(s)," that he made a prior claim or was involved in prior litigation, and that he played football prior to the injury. Appendix to Appellant's Brief at 50–53. The trial court granted Berrier's motion, instructing Reliable that no such evidence could be offered without leave of the court, which "would be granted on the showing that any of the evidence was causally related to the accident" at issue. Brief of Appellant at 61.

During Berrier's case-in-chief, he called several doctors to testify on his behalf. Dr. Linda Stewart, who had treated Berrier for chronic back pain since 2001, testified on redirect examination that in her medical opinion Berrier's injuries were caused by his fall from the treadmill. Transcript at 397. Reliable argued that because Dr. Stewart "indicated [Berrier] had absolutely no problem with his back before the date of the accident" that she had opened the door to further questioning to challenge the accuracy of this statement and her medical conclusion. *Id.* at 401. The trial court denied Reliable's motion to set aside the prior ruling in limine, but permitted Reliable to question Dr. Stewart regarding Berrier's past injuries outside the presence of the jury for purposes of formulating an offer to prove.[2]

Dr. Gary Yarkony, who reviewed Berrier's extensive medical history going back to high school and had examined him on two occasions, also testified that in his medical opinion Berrier suffered a herniated lumbar disc when he fell from the treadmill. *Id.* at 463. During Dr. Yarkony's testimony, he had before him the stack of records he had reviewed. Even

so, Reliable was not permitted to question Dr. Yarkony about Berrier's medical history prior to the date of his fall from the treadmill. Specifically, Reliable sought to question Dr. Yarkony about records dating up to the date of the incident in relation to Berrier's condition. However, the trial court refused to allow "going into individual records," but let Reliable request that Dr. Yarkony separate out the portion of the documents pertaining to before Berrier's fall from the treadmill. *Id.* at 481–82.

Judgment was entered in Berrier's favor in the amount of $9,000,000 on April 23, 2004. In calculating damages, the jury assigned ten percent of the fault for the incident to QIC and the rest to Reliable, resulting in Reliable's damages amounting to $8,100,000. Reliable filed a motion to correct error on May 20, 2004, which the trial court denied. Reliable then timely filed its notice of appeal. However, while pending on appeal, on October 29, 2004, Reliable moved for leave to file a motion for relief from judgment under Trial Rule 60(B). On January 6, 2005, this court stayed proceedings on appeal and remanded the cause to the trial court for a determination on Reliable's Trial Rule 60(B) motion, filed with the trial court on May 31, 2005. After a hearing on the matter, the trial court denied Reliable's motion for relief from the judgment on August 17, 2005. This court resumed consideration of the matter on appeal, only to suspend consideration while the trial court ruled on Reliable's motion to correct error regarding the denial of its Trial Rule 60(B) motion. The trial court denied Reliable's second motion to correct error, and Reliable again filed notice of appeal on October 28, 2005. Oral argument was heard by this court on July 14, 2006.

---

2. By agreement, Reliable made a cumulative offer of proof at the end of trial, after making repeated objections and noting its desire to make an offer of proof during testimony at trial. *See id.* at 763, 836–38.

## Discussion and Decision

■ On appeal, Reliable asserts that the trial court erred when it disallowed cross-examination by Reliable of Berrier's medical expert witnesses about his past back injuries. During trial, Reliable sought to introduce, through cross-examination, Berrier's 1989 football injury to his spinal cord, Berrier's 1996 automobile accident resulting in complaints of lower back pain and a doctor's visit for continued upper and lower back pain, a 1997 lawsuit resulting from the automobile accident in which he alleged to have suffered permanent partial impairment, and Berrier's fall down seven stairs while at work in 1997, which injured his back and shoulder. Reliable wished to "complete and challenge the limited medical history presented by [Berrier] and his witnesses," but the trial court denied questioning before the jury on these matters. Br. of Appellant at 20.

■ Addressing this issue in its denial of Reliable's motion for relief from judgment, the trial court reiterated the well-settled rule that "a tortfeasor takes the injured person as he finds [the person] and the tortfeasor is not relieved from liability merely because an injured party's pre-existing physical condition makes [the person] more susceptible to injury." *Id.* at 62 (quoting *Bolin v. Wingert,* 764 N.E.2d 201 (Ind.2002)). Moreover, the trial court noted that "a defendant is liable for the aggravation or exacerbation of a current injury to the extent that the defendant's conduct has resulted in the aggravation of the pre-existing condition [but] not for the condition as it was." *Id.* (quoting *Alexander v. Scheid,* 726 N.E.2d 272, 284 (Ind. 2000) (internal quotations omitted)). However, the trial court also explained that Reliable "neither presented or offered any independent medical evidence that would indicate the plaintiff's current injuries were really prior injuries exacerbated in the current accident." *Id.* Although the trial court held that Reliable had preserved the issue by making several timely objections, it expressed that Reliable failed "to make any causal link between any past injuries the plaintiff may have sustained and the injury for which the parties were before the Court." *Id.* at 63. It therefore disallowed cross-examination regarding Berrier's previous injuries.

■ As a threshold issue, Berrier claims that Reliable has not preserved the issue of the exclusion of this testimony by making a proper offer of proof. Indiana Rule of Evidence 103(a)(2) states:

Error may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected, and ... the substance of the evidence was made known to the court by a proper offer of proof, or was apparent from the context within which questions were asked.

This rule "may be interpreted to relax somewhat the rigid specificity requirement of an offer to prove because it states merely that 'the substance of the evidence' be made known to the trial court or be 'apparent from the context within which the questions were asked.'" *Nasser v. State,* 646 N.E.2d 673, 682 n. 15 (Ind.Ct.App. 1995). Here, the trial court was satisfied, as are we, that Reliable made sufficient objections and a cumulative offer of proof at the end of trial, and that the subject matter at issue was apparent to the trial court. We therefore address this issue on its merits.

■ When reviewing a trial court's admission or exclusion of evidence, we apply an abuse of discretion standard. *Fairfield Dev., Inc. v. Georgetown Woods Sr. Apartments Ltd. P'ship,* 768 N.E.2d 463, 466 (Ind.Ct.App.2002), *trans. denied.* Even if the trial court errs in its ruling on

the admissibility of evidence, we reverse only if the error is "inconsistent with substantial justice." *Id.* at 466–67. "Similarly, the trial court has discretion to determine the scope of cross-examination and only an abuse of that discretion warrants reversal." *Walker v. Cuppett,* 808 N.E.2d 85, 92 (Ind.Ct.App.2004). Permissible cross-examination includes subject matter covered on direct examination, as well as any matter that tends to elucidate, modify, explain, contradict or rebut testimony given during direct examination by a witness. *Hicks v. State,* 510 N.E.2d 676, 679 (Ind.1987).

We addressed a situation similar to the current matter in *Walker,* 808 N.E.2d at 85, where we reversed an award of damages for a woman who was injured in an auto accident. There, the trial court granted Cuppett's motion in limine, preventing any mention—including during cross-examination of doctors as expert witnesses—of Cuppett's arthritis and other conditions in her neck, her fibromyalgia, and her treatment for headaches predating the accident. We concluded that this resulted in a misleading impression of the facts for the jury, and was therefore error inconsistent with substantial justice. *Id.* at 102.

Berrier now makes the same argument as Cuppett did in *Walker,* namely that no expert testimony was presented by the defense, which should therefore have prevented it from "introducing any evidence or conducting any cross-examination regarding other possible causes for [the plaintiff's] pain in the absence of expert testimony that such causation was likely." *Id.* at 94. We dismissed this argument in *Walker* as confusing the "issue of the burden of proof with the issue of the relevancy or admissibility of evidence and the proper scope of cross-examination." *Id.* By way of clarification, we began from the standpoint that

defendants in personal injury actions are entitled to thoroughly challenge a plaintiff's expert with respect to that expert's causation opinions. It is axiomatic that the accuracy, consistency, and credibility of an expert's opinions may properly be challenged by vigorous cross-examination, presentation of contrary evidence, argument of counsel, and resolution by the trier of fact.

*Id.* at 95. We noted that a defendant's ability to "challenge or cast doubt upon the opinion of a plaintiff's expert ... with evidence that the plaintiff suffers from a pain-producing disease or mechanism, unrelated to the defendant's negligence, in the precise area of the body where the plaintiff claims to suffer ongoing pain" lends itself to the jury's decision of whether or not to rely upon the expert's testimony. *Id.*

■ We acknowledged, too, that a standard of admissibility existed for defendants in personal injury actions wishing to introduce evidence of a plaintiff's medical problems unrelated to the defendant's negligence. The test of admissibility applied was "not probability, but the possibility that a plaintiff's claimed damages resulted from a condition or event unrelated to the defendant's negligence." *Id.* at 95. We reiterated the general rule that " 'cross-examination and other evidence is admissible to lay a basis for impeachment or show that the injury complained of is due to some other cause where the present injury and the prior injury or condition are similar, or where a causal relationship between them can be shown.' " *Id.* at 96 (quoting *Rondinelli v. Bowden,* 155 Ind.App. 582, 586, 293 N.E.2d 812, 814–15 (1973)). Importantly, we also cautioned, "If the cross-examiner fails to come forward with evidence showing a logical nexus or causal relationship between the injury sued on

and the unrelated injury or condition, the evidence may be excluded." *Id.*

In *Walker,* Cuppett claimed that no evidence was presented linking her prior medical history to injuries she sustained in the collision, and therefore no nexus between her medical history and her damages was established. We found this argument "ill defined" because it essentially conceded that her prior conditions were unrelated to the accident, which was the reason the defense wished to inform the jury of those conditions as "another possible source of Cuppett's continuing pain." *Id.* We concluded that the defendant's proffered evidence provided a "possible logical nexus to her complaints" and met the standard of admissibility. *Id.*

In the present case, the overall effect of the trial court's rulings was that the jury was given the impression that Berrier was a hale and hearty athletic young man with no adverse health conditions prior to his fall from the Fitness Barn's treadmill. Reliable was deprived of the opportunity to test in the presence of the jury the opinions of Dr. Stewart and Dr. Yarkony as to why they did not believe Berrier's prior injuries were in any way a cause of at least some of his condition after the treadmill fall. Although Reliable would have been unable to use the prior medical history to prove, without supporting expert opinion, that the prior injuries were causes of any of the post-treadmill condition of the plaintiff, Reliable should have been able to test Berrier's expert's opinions that all of the post-treadmill condition was a result of the treadmill fall, and the at least implicit opinion that none of the pre-treadmill injuries contributed to Berrier's post-fall condition.

A good faith basis for challenging these witnesses is found in the opinion submitted by Jaymie LaBarbera, a nurse-paralegal who reviewed Berrier's medical records on behalf of Reliable's insurance carrier. She summarized her assessment as being that "the claimant [Berrier] appears to have sustained an injury to his low back that was superimposed on a prior degenerative condition." Addendum to Brief of Appellee at 20. She also noted "[s]everal areas of abnormal disc findings such as bulges ... not routinely noted in acute injuries" in a scan done of Berrier's lower back shortly after he fell from the treadmill. *Id.* Her conclusion was that "the claimant may have had intervening events which necessitated the need for the ongoing treatment and subsequent surgeries," and that it was her "nursing opinion that treatment through [March of 1999] appears directly related to the initial injury, however any treatment after that time appears to be related to his prior degenerative condition that was aggravated and any potential new injuries he may have sustained." *Id.* at 21. In sum, this report offers the possibility that some of Berrier's claimed damages resulted from a condition or event unrelated to any negligence on the part of Reliable, and liability might have been only for exacerbation rather than in toto. Thus, the trial court went too far when it failed to allow cross-examination of Berrier's medical experts before the jury for the purpose of challenging their opinions regarding his condition.[3]

### Conclusion

The trial court erred when it prevented cross-examination of Berrier's medical experts before the jury for purposes of challenging their opinions. This was inconsistent with substantial justice, and we

---

**3.** Having decided the issue of Reliable's cross-examination of Berrier's witnesses in this manner, we need not address Reliable's contention that Berrier "opened the door" for cross-examination of topics included in the motion in limine.

therefore reverse and remand for a new trial.

Reversed and remanded.

SHARPNACK, J., and NAJAM, J., concur.