FILED

Sep 20 2016, 8:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Mark D. Gerth
Kightlinger & Gray LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

David W. Stone IV
Stone Law Office & Legal
Research
Anderson, Indiana

Michael W. Phelps
Rom Byron
Nunn Law Office
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State Farm Mutual Automobile
Insurance Company,

*Appellant-Defendant*,

v.

Sean Woodgett,

*Appellee-Plaintiff*.

September 20, 2016

Court of Appeals Case No.
18A02-1505-CT-292

Appeal from the Delaware Circuit
Court

The Honorable Marianne L.
Vorhees, Judge

Trial Court Cause No.
18C01-1302-CT-11

**Brown, Judge.**

[1] State Farm Mutual Automobile Insurance Company ("State Farm") appeals the trial court's order on verdict and judgment in favor of Sean Woodgett. State Farm raises three issues, one of which we find dispositive and which we revise and restate as whether the court abused its discretion in excluding certain evidence. We reverse and remand.

## Facts and Procedural History

[2] On September 20, 2011, at approximately 1:10 p.m., Woodgett was driving a van northbound on Batavia Avenue in Muncie, Indiana. While stopped waiting for the traffic signal to change at 7th Avenue, Woodgett's van was struck from behind by a van being operated by Timmie Storms. The force of the collision caused Woodgett's van to roll into the back of another automobile. Woodgett's father Nicklaus arrived on the scene a few minutes after the accident, and about fifteen minutes later he followed Woodgett as they began to drive to the hospital. On the way, the bumper fell off the van, and they decided to first drive home and leave the van. After doing so, they proceeded to the emergency room where Woodgett was treated for neck pain and a headache. He was diagnosed with a cervical sprain and advised to take ibuprofen. At the time, Woodgett had uninsured/underinsured motorist coverage pursuant to a policy issued by State Farm.

[3] On October 19, 2011, Woodgett saw his family physician, Dr. Mark Litz, for "intermittent stress headaches" and neck pain. Transcript at 135. Woodgett next visited Dr. Litz on January 17, 2012, again for intermittent stress headaches and neck pain, and Dr. Litz prescribed physical therapy. In

February 2012, Woodgett underwent five physical therapy sessions, and afterwards he reported that he had slight headaches that came infrequently and was able to engage in all of his recreational activities with no neck pain at all.

[4]     In January 2013, Woodgett saw neurologist, John D. Wulff, M.D., Woodgett described two types of headaches he was experiencing, including a daily mild headache and a "very severe headache" about three or four times per week involving a "throbbing sensation over the left posterior head" that can be "unbearable." Exhibits at 158. Woodgett noted that since the accident of September 20, 2011, his mild headaches "gradually got worse." *Id.* Dr. Wulff diagnosed Woodgett with migraines.

[5]     On February 25, 2013, Woodgett filed a complaint for damages against Storms individually and State Farm pursuant to Woodgett's uninsured motorist coverage.[1] The court commenced a jury trial on April 7, 2015. At the outset of trial, Woodgett orally moved in limine to preclude State Farm from introducing any evidence concerning a second motor vehicle accident involving Woodgett occurring in the fall of 2012. In his oral motion, Woodgett's counsel stated:

> I would move in limine to prohibit the defense from discussing an intervening cause. What we're talking about is in the deposition of Sean Woodgett, defense counsel raised were you in any crashes after this crash concerning this case. Yes, in the fall of 2012. Okay, what was it. It was a minor sideswipe crash. Were you injured? No. Did you go to the hospital? No. Did

---

[1] The complaint also named another insurer which was subsequently dismissed from the action.

your headaches get worse after the fall of 2012? Yes. How did your headaches get worse? Well, they were progressively getting worse. The crash didn't – in 2012 didn't cause them to get worse. They had been getting worse for a period of time and they just kept on getting worse. In the depositions of Dr. Litz, family doctor, and Dr. Wulff, neurologist, there's no discussion as to this crash or any potential impact on [Woodgett's] headaches.[2]

Transcript at 13. Counsel for State Farm responded that Woodgett admitted that his pain increased after the second accident, that he did not tell his doctors about the second accident, and that the doctors testified during depositions that minor injuries can cause the sort of headaches that Woodgett experienced. Woodgett's counsel argued that State Farm had the opportunity "to do a Trial Rule 35 exam and have a doctor opine on whether it was more likely than not that the second wreck caused the exacerbation of the injuries," and State Farm responded that it was not its duty to prove causation. *Id.* at 15. The court indicated that it would examine a case directed to its attention by State Farm, *Walker v. Cuppett*, 808 N.E.2d 85 (Ind. Ct. App. 2004), and then revisit the issue.

[6] State Farm's counsel directed the court's attention to testimony given by Dr. Wulff at his first deposition of March 12, 2014, as follows:

---

[2] Woodgett's deposition is not contained in the record on appeal.

Q. And given the trauma that's associated when you say, perhaps, post-traumatic migraine or whatnot, does that trauma have to be major? Can it be minor?

A. It can be pretty minor trauma. . . .

Appellant's Appendix at 90. State Farm argued that this testimony was "enough for the *Walker v. Cuppett* standard, possibility versus probability being the standard." Transcript at 27. Woodgett's counsel responded that Dr. Wulff was opining regarding the first accident, that the statement was being taken out of context, and that "without referencing the second accident, he can give no causal basis for that." *Id.* When asked by the court whether the jury would be asked to speculate regarding injury from the second accident, State Farm's counsel argued:

> Not at all, Your Honor. There's even evidence, in addition to the ten (10) month gap between the visits, there's evidence that there were different types of headaches. The first round of headaches, we're just talking, the medical records note them as muscular stress headaches. The second round of treatment, it goes from migraine headaches. So there's evidence there as to the difference between the two (2). They don't have to speculate because they can look at the medical records and they can see that they're different types of headaches. And they tie in nicely between the two (2) accidents.

*Id.* at 32.

[7] Following a recess, the court ruled that "there's no medical evidence that directly speaks to the issues of the injury that [Woodgett] suffered as a result of

the second collision," that the jury would have to speculate as to the injury that the second collision caused," that the case of *Daub v. Daub*, 629 N.E.2d 873 (Ind. Ct. App. 1994), *trans. denied*, states that head injuries are not within a lay person's understanding and expert testimony is required, and it ruled that "without expert testimony from a doctor by way of using [Woodgett's] doctor or by having a Trial Rule 35 examination and a medical doctor's opinion, then I would have to exclude the evidence as to the second collision," and it granted Woodgett's motion. *Id.* at 37.

[8] On the second day of trial, April 8, 2015, State Farm moved the court to reconsider its ruling, which the court denied. Subsequently, State Farm made an offer to prove noting that Dr. Wulff's deposition testimony was "enough to relate the accidents after that point to the headaches, particularly the migraine headaches complained of here, which were not documented into the records until January of 2013" and that Woodgett misled the doctors when he told them that he had experienced "no other trauma." *Id.* at 172-173.

[9] The jury returned a verdict in favor of Woodgett in the amount of $85,000, and the court entered judgment in Woodgett's favor for that amount against Storms and State Farm.

## *Discussion*

[10] The dispositive issue is whether the trial court abused its discretion in excluding evidence of the second automobile accident. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Lanni v. Nat'l Collegiate*

*Athletic Ass'n*, 989 N.E.2d 791, 797-798 (Ind. Ct. App. 2013). We will reverse a trial court's decision to admit or exclude evidence only if that decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* at 798. A trial court may also abuse its discretion if its decision is without reason or is based upon impermissible considerations. *Walker v. Cuppett*, 808 N.E.2d 85, 92 (Ind. Ct. App. 2004). Even if a trial court errs in a ruling on the admissibility of evidence, this court will reverse only if the error is inconsistent with substantial justice. *Id.*

[11] State Farm argues that evidence of the second accident was admissible to inform the jury as to a possible cause of Woodgett's migraine headaches and that the court abused its discretion in excluding this evidence, ruling that it "was not admissible because it was not supported by any expert medical testimony to demonstrate a connection . . . ." Appellant's Brief at 7. It argues that this court has previously rejected a rule that a defendant's evidence on causation must be supported by expert testimony that such causation was likely, citing to *Walker* and *Armstrong v. Gordon*, 871 N.E.2d 287 (Ind. Ct. App. 2007), *reh'g denied*, *trans. denied*, for the proposition. State Farm asserts that "the heart of the matter which the jury was asked to decide was whether [Woodgett's] ongoing migraine headaches were caused by the negligence of the defendant" and that the "court's exclusion of evidence of the second motor vehicle collision directly implicated that issue," which "was error and inconsistent with substantial justice." *Id.* at 13.

[12] State Farm also points to Dr. Wulff's testimony that posttraumatic or postconcussive headaches are "usually" caused when "[s]omething has jostled the head and brain to result in headache issues, you know, memory issues, and again, with him, perhaps some of the sleep issues as well," and argues it should have been given the opportunity to question Woodgett about the second accident regarding whether it jostled Woodgett's head and brain to result in headache issues. Appellant's Reply Brief at 5. State Farm also argues that it was not required to address the second accident during cross-examination of Dr. Wulff nor offer its own expert testimony and instead was required only to present evidence that it was possible the second accident caused Woodgett's migraines. It maintains that the timeline of events, in which Woodgett completed his first course of physical therapy in February of 2012, was involved in a second accident in the fall of 2012, and then sought further medical care in late January 2013, and that his migraines were not documented until three or four months after the second accident, met the applicable evidentiary burden.

[13] Woodgett contends that State Farm seeks to assert a possible cause of the injuries without any evidence, medical or otherwise, establishing a causal connection which simply invites confusion and speculation by the jury. He argues *Walker* is distinguishable and that "State Farm's offer of proof said nothing about the circumstances of the later accident either as to the force involved, vehicle damage or any areas of injury to Woodgett." Appellee's Brief at 9. He states that "State Farm failed to show the nexus or relationship between the later minor accident and the injuries sued for." *Id.* at 10. He

maintains that State Farm could not connect the second accident to the injuries at issue because it did not ask Dr. Wulff about a possible connection between the development of migraines in connection to that accident and did not provide other expert testimony to show a connection. Woodgett argues that State Farm did not present evidence that the second accident broke the chain of causation and did not proffer evidence legitimately suggesting that the injuries were not caused by the first collision.

[14] In *Walker*, this Court addressed whether the trial court abused its discretion in precluding the admission of certain evidence relating to defendant Joan Cuppett's medical history. 808 N.E.2d at 89. In that case, on February 3, 1998, Michael Walker rear-ended Cuppett's car, and although she did not initially complain of injuries, while driving home she began experiencing neck, shoulder, and elbow pain, as well as severe headaches that evening that continued off and on. *Id.* Her neck and shoulder pain also continued intermittently. *Id.* Eight days later, Cuppett visited Dr. Patrick Foley, her family physician, who ordered x-rays and a CT scan, which revealed degenerative arthritic conditions in her cervical spine, and refilled a prescription for Fiorinal, a headache medicine she had been taking prior to the accident. *Id.* Cuppett also continued to see a chiropractor from whom she received treatment for her neck pain and headaches as well as for pain in other areas of her body. *Id.* at 89-90. She stopped seeing Dr. Foley at the end of 1998, and at her first visit to her new doctor in January 1999 she did not complain of neck pain. *Id.* at 90. She did mention neck pain at later visits, and she was also treated for

"allergies, hypertension, high cholesterol, asthma, gastroesophageal reflux disease, menopause, degenerative conditions in her knees, and obesity." *Id.* She also had been diagnosed with fibromyalgia before the accident. *Id.*

[15] In June 2000, Cuppett was referred to a pain management center for her continuing neck pain. *Id.* The first treating physician "opined that her chronic neck pain was consistent 'with possible mild facet arthritis since that mediated the pain and/or some myofascial pain in the soft tissues in the right cervical paraspinal region,'" but a second physician, Dr. James Crawford, "believed her neck pain was caused solely by myofascial problems stemming from the 1998 automobile accident and treated her accordingly." *Id.* Cuppett visited physical therapists, an acupuncturist, and a pain psychologist for treatment of her neck pain. *Id.*

[16] Cuppett filed a complaint against Walker, who died prior to trial. *Id.* Also prior to trial the court granted Cuppett's motion in limine to prevent the Estate from presenting "Any Evidence of a Pre-Existing Affliction or Condition Not Supported by Admissible Expert Medical Opinion," "Any Evidence of Unrelated and Post-Collision or Subsequent Injuries/Occurrence Not Supported by Admissible Medical Opinion," or "Any Evidence of Low Impact Collision and Relationship to Joan Cuppett's Physical Injuries." *Id.* This ruling "allowed [Cuppett] to redact from her medical records any reference to the arthritis or other non-accident related conditions in her neck, her diagnosis of fibromyalgia, and her pre-accident treatment for headaches," and it prevented the jury "from hearing any reference to these matters in pre-trial evidentiary

depositions conducted of Dr. Crawford and one of her physical therapists, Dr. David Cross, or in the trial testimony of Dr. Foley," as well as the videotaped testimony of Walker concerning the accident itself and his interaction with Cuppett afterward. *Id.* Cuppett also redacted any mention of other ailments in her medical bills submitted into evidence. *Id.* at 91. The court held a damages hearing and granted judgment on the evidence with respect to all of Cuppett's claimed past medical bills, totaling $17,025.99, and a jury awarded another $10,000 for claimed future medical expenses. *Id.* She was ultimately awarded $81,808.79 after the court granted her motion for sanctions as well as additur. *Id.*

[17] On appeal, this court discussed at length the evidence excluded by the court and observed:

> The sum effect of the trial court's evidentiary rulings was that the Estate could make no mention of Cuppett's arthritis and other conditions in her neck, her fibromyalgia, and her treatment for headaches predating the accident. The complete exclusion of Walker's videotaped testimony also prevented the Estate from presenting evidence regarding the mildness of the accident and Cuppett's condition immediately thereafter.

*Id.* at 94. Cuppett argued that, since the Estate did not present its own expert testimony to contradict Dr. Crawford's and show that "the right-side neck pain she complains of is being caused by the arthritic and other conditions [in] her neck, rather than injuries inflicted by the accident," the court's rulings were correct because such evidence was irrelevant. *Id.* Cuppett cited to *Daub v.*

*Daub*, 629 N.E.2d 873 (Ind. Ct. App. 1994), *trans. denied*, in which this Court noted that a negligence action requires "a reasonable connection between a defendant's conduct and the damages that a plaintiff claims to have suffered" and that "the question of the causal connection between a permanent condition, an injury, and a pre-existing affliction or condition is often a complicated medical question," and held accordingly that "when the issue of causation is not within the understanding of a layperson, testimony of an expert witness on the issue is necessary." *Id.* (citing *Daub*, 629 N.E.2d at 877-878; *Muncie State Transit Auth. v. Smith*, 743 N.E.2d 1214, 1217 (Ind. Ct. App. 2001) (stating, "when the cause of the injury is not one which is apparent to a lay person and multiple factors may have contributed to causation, expert evidence on the subject is required")).

[18]   This Court observed that Cuppett's argument "confuses the issue of the burden of proof with the issue of the relevancy or admissibility of evidence and the proper scope of cross-examination," noting that *Daub* addressed a plaintiff's burden of proving causation. *Id.*  It stated that *Daub* did not address "the relevancy of causation evidence that contradicts the only expert testimony or suggested in any way that such evidence is necessarily irrelevant or inadmissible," and, "[i]nstead, it is evident that defendants in personal injury actions are entitled to thoroughly challenge a plaintiff's expert with respect to that expert's causation opinions." *Id.* at 94-95.  The court opined that "[d]octors and other expert witnesses are not oracles whose opinions, once stated, cannot be questioned or refuted by other evidence, even if that evidence

does not come in the form of another expert's testimony," that juries are free to accept or reject the opinion of an expert witness, and that

> [t]his rule would seem to have little meaning if, as in this case, a defendant cannot challenge or cast doubt upon the opinion of a plaintiff's expert that the plaintiff was injured by the defendant with evidence that the plaintiff suffers from a pain-producing disease or mechanism, unrelated to the defendant's negligence, in the precise area of the body where the plaintiff claims to suffer ongoing pain.

*Id.* at 95. We then noted the "standard of admissibility for a personal injury defendant to introduce evidence of a plaintiff's medical problems that are unrelated to the defendant's negligence," first stated in *Rondinelli v. Bowden*, 155 Ind. App. 582, 586, 293 N.E.2d 812, 814-815 (1973), as follows:

> The general rule is that cross-examination and other evidence is admissible to lay a basis for impeachment or show that the injury complained of is due to some other cause where the present injury and the prior injury or condition are similar, or where a causal relationship between them can be shown. If the cross-examiner fails to come forward with evidence showing a logical nexus or causal relationship between the injury sued on and the unrelated injury or condition, the evidence may be excluded. The test of admissibility is not probability, but the possibility that a plaintiff's claimed damages resulted from a condition or event unrelated to the defendant's negligence.

*Id.* at 95-96 (internal quotations and citations omitted). It ruled that the Estate's proffered evidence of Cuppett's medical issues unrelated to the accident

provided "a possible logical nexus to her complaints and meets the *Rondinelli* standard of admissibility." *Id.* at 96.

[19] Here, Woodgett moved in limine to exclude evidence of a second automobile accident which occurred in the fall of 2012. The trial court ruled that such evidence was inadmissible based upon *Daub*. However, as explained in *Walker*, the rule in *Daub* concerns a plaintiff's burden of proof and not the relevancy standard applicable to the admission of evidence a defendant wishes to present in a personal injury action. As stated in *Rondinelli*, the applicable test is whether it is possible that a plaintiff's claimed damages resulted from a condition or event unrelated to the defendant's negligence, where a logical nexus or causal relationship between the conditions or events exists.

[20] Evidence at trial was presented by way of Dr. Wulff's deposition in which he testified that post-traumatic migraine headaches can be the result of "pretty minor trauma." Appellant's Appendix at 90. The medical records admitted at trial indicated that Woodgett had been treated for intermittent stress headaches and neck pain following the September 20, 2011 accident, that he underwent physical therapy in February 2012, after which reporting that he had slight headaches that came infrequently and was able to engage in all of his recreational activities with no neck pain at all, and that he began seeing Dr. Wulff, the neurologist, in January 2013 for two types of headaches, including a daily mild headache and a "very severe headache" about three or four times per week. Exhibits at 158. At his deposition, Woodgett testified that he had been involved in a second automobile accident in the fall of 2012 which was

described as a minor sideswipe crash. State Farm sought to question Woodgett at trial regarding this second accident. Recognizing that Woodgett's complained injuries were allegedly the result of an automobile accident in the fall of 2011, that he stopped medical treatment in February of 2012, that he was involved in another accident in the fall of 2012, and that he again sought medical treatment for headaches in January 2013, we find that a logical nexus exists between the second accident and the migraine headaches sufficient such that the second accident was a possible cause of such headaches and that the court abused its discretion in excluding any evidence of the second accident.

[21] Having concluded that the court abused its discretion in refusing to permit State Farm to question Woodgett regarding the second accident, we must now address whether this error was inconsistent with substantial justice. We conclude that it was. This exclusion went to the heart of the matter that the jury was asked to decide—the extent to which Woodgett's accident with Storms caused the headaches experienced by Woodgett and, in particular, the severe migraine headaches.

## Conclusion

[22] The court abused its discretion when it excluded evidence of a second automobile accident involving Woodgett, which was inconsistent with substantial justice. We reverse the court's judgment and remand for

proceedings consistent with this opinion.[3] *See Armstrong*, 871 N.E.2d at 296 (holding that a logical nexus between the injury sued upon and an unrelated prior condition satisfied the *Rondinelli* test requiring only the possibility that the plaintiff's claimed damages in whole or in part resulted from a condition or event unrelated to the defendant's negligence).

[23] For the foregoing reasons, we reverse the court's judgment and remand.

[24] Reversed and remanded.

Baker, J., and May, J., concur.

---

[3] Because we reverse and remand, we need not address State Farm's arguments related to the jury instructions given by the court.